A. W. Wilkey, Respondent, v. Rouse Construction Company, Appellant.*

Springfield Court of Appeals.  May 20, 1930.

496

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, section 2834, p. 850, n. 51; Master and Servant, 39CJ, section 1568, p. 1349, n. 76, 77.

*Jeffries, Simpson & Plummer* and *Wammack, Welborn & Cooper* for appellant.

*George Munger* and *Gene Munger* for respondent.

BAILEY, J.—This is an action to recover damages for the destruction of plaintiff's automobile alleged to have been the result of defendant's failure to place barriers and warning signals at a place on the State highway where a bridge was being constructed and a detour commenced. The petition charged that defendant corporation was engaged as contractor by the State Highway Commission to construct concrete roads and bridges on State Highway No. 16, in Stoddard county, and on the —— day of October, 1926, was engaged in rebuilding a bridge on said highway at Wahite; that the highway was in use at that point but in order to so use it the State Highway Commission caused a detour bridge to be constructed just south of said Wahite Bridge to be used until defendant should complete the highway bridge; that in order to get upon said detour bridge "it was necessary to leave said highway at the east end of said bridge at an acute angle making said detour a dangerous one to go upon." After reciting defendant's duties as to warnings and barriers the petition charges that, "defendants negligently and carelessly failed and refused to place and maintain during the nighttime sufficient signals, guards, barriers or notices to apprise people approaching said bridge along said highway from the east of its condition and of the necessity to use said detour and temporary bridge and negligently and carelessly failed to take any steps to notify the traveling public approaching said bridge of their danger in so doing and of the necessity of detouring as aforesaid."

It is then alleged that at about 10:00 P. M. on the day referred to plaintiff's car, while being carefully driven and without any knowledge on the part of the operator of said car as to the condition of the bridge or the necessity to detour, by reason of the defendant's negligence as aforesaid, was thrown from the detour bridge and wholly demolished. Defendant's answer sets up that it was not at any time engaged in the building of the bridge mentioned in the petition but that all of said bridge was constructed by the firm of Humphreys & Stebbins as independent contractors over whom defendant had no authority or control. A further defense of contributory negligence was pleaded. On trial to a jury plaintiff obtained a verdict and judgment in the sum of $1000, from which judgment, defendant has appealed.

At the trial the court gave plaintiff's instruction B, which, in effect, took away the defense that the work on the bridge was being performed by an independent contractor for whose acts defendant was not responsible. The court also refused defendant's instruction A, which was a peremptory instruction to find for defendant on the theory that Humphreys & Stebbins were constructing the bridge as independent contractors for whose acts defendant was not responsible. The court's action in giving plaintiff's instruction B, and in refusing defendant's instruction A, is assigned as error. In considering this assignment, it becomes necessary to briefly set forth the facts.

It is conceded that defendant was an original contractor for the building of something over four miles of concrete road from Gray Ridge to Morehouse, which contract included the Wahite Bridge in question. This contract was in writing. Among other things it contained the following provision, to-wit: "3-7. Subletting or Assignment of Contract—The contract or any portion thereof shall not be assigned or sublet except with the written consent of the chief engineer. No subcontract shall under any circumstances relieve the contractor of his liabilities and obligations under his contract and all transactions with the commission or the engineer must be through the general contractor. Subcontractors will be recognized only in the capacity of workmen and shall be subject to the same requirements as to character and competence."

Sections 4-19, provided that until acceptance of the work by the engineer it should be under the charge and care of the contractor, defendant herein, and the contractor shall take necessary precaution against injury or damage. Sections 4-20 provided that when in the opinion of the engineer a portion of the work was in an acceptable condition for travel it should be open to traffic as might be directed. Sections 24-1 of the contract was as follows: "Barricades shall consist of a wood fence built across the right-of-way, with double or single gates across the traveled way. Detour boards shall consist of wood sign boards on wood posts. Barricades and detour

boards shall be constructed at places designated by the engineer and in accordance with these specifications.

" 'Cardboard or metal signs bearing the proper inscriptions will be placed on the boards by the engineer, without cost to the contractor.' "

There was undisputed evidence that defendant sub-let the building of the Wahite Bridge to a co-partnership composed of Humphreys & Stebbins. This evidence consisted of oral testimony and letters. The subcontract was apparently never formally approved by the written consent of the chief engineer, as the contract required, but that was a provision of the contract which might be waived and was in fact waived under the evidence in this case. We have so held under similar cimcumstances. [State v. Southern Surety Co., 294 S. W. 123 l. c. 130.] There was also undisputed evidence that Humphreys & Stebbins had complete charge of the work of erecting the Wahite Bridge, to be governed, of course, by the plans and specifications laid down in the original contract and subject to such supplemental orders as might be placed with the original contractors by the State Highway Commission. There was also undisputed evidence that the men employed in the building of the bridge in question were hired and paid by Humphreys & Stebbins. Their superintendent testified in part as follows: "I had full charge of overseeing the work on the bridge. I employed the men working on the bridge. They were paid by Humphreys & Stebbins. I was never employed by the Rouse Construction Company. None of the men who built that bridge were employed by the Rouse Construction Company. I learned of the accident to Mr. Wilkey's car on October 22, 1926. The day before the accident I worked on a bridge about 300 yards west of the Wahite Bridge. I had not on that day worked on the Wahite Bridge. I don't remember exactly the number of days before this that I had worked on the Wahite Bridge but I guess it was something like a week. We had separate crews of men on these two bridges but at this time Wahite Bridge was completed except the hand rails and we had taken all the crew to the next or last bridge. The bridge (Wahite) was not opened to public travel yet and people passed over on a temporary bridge built south something like twenty or twenty-five feet. The temporary bridge was built by the maintenance crew of the State Highway Department provided by the State department. You turn off the concrete to go on the temporary bridge something near sixty feet from the east end of the bridge on the east side. I had charge of maintaining barricades, warnings and lights at the approach of Wahite Bridge."

For the purposes of this opinion it may then be accepted as a fact that Humphreys & Stebbins were independent contractors or subcontractors under the original contract for the building of the

bridge in question. They were not controlled by defendant and had absolute charge of the work. It is also an undisputed fact that defendant had laid the concrete slab on the highway leading to this bridge on the east and that the work had not yet been accepted by the State, the road still being under the charge and care of defendant as provided by sections 4-19, of the contract. It may also be taken as an accepted fact, for the purposes of the question at hand, that there was negligence in failing to provide sufficient lights, barricades, warnings and signals at the place where the detour commenced, which was about sixty to 100 feet east of the bridge proper, and that the accident was caused by such negligence. These were disputed points now settled by the jury's verdict. The real question at issue is whether or not defendant may be held responsible for the negligence of an independent contractor under the circumstances heretofore set forth. Defendant has cited numerous authorities upholding the general proposition that, "an employer, including original contractor, is not responsible for the acts of an independent contractor where the work done by such independent contractor is not in itself unlawful or intrinsically or inherently dangerous." Among such authorities are Hilsdorf v. St. Louis et al., 45 Mo. 94; O'Hara v. Gas Light Co., 244 Mo. 395, 148 S. W. 884; Fink v. Missouri Furnace Co., 82 Mo. 276; Clark's Admx. v. Hannibal & St. J. R. R. Co., 36 Mo. 203; Green v. Soule, 145 Cal. 96; Salliotte v. King Bridge Co., 122 Fed. 378, 65 L. R. A. 620.

This later case appears to be a leading case on the subject and thus states the rule, "A general contractor is not liable to third persons for the negligent acts of an independent subcontractor unless the thing contracted to be done is necessarily a public nuisance, or the injury is a direct result from the act or thing which the independent contractor is required to do. [16 A. & Eng. Ency. Law, 192, 196; Quarman v. Burnett, 6 M. & W. 499; Laugher v. Pointer, 5 B. & C. 560; Blake v. Ferris, 5 N. Y. 48; Robbins v. Chicago, 4 Wall. 657; Casement v. Brown, 148 U. S. 615.]

"'This principle of non-liability for the negligence of an independent contractor applies to and exempts the general contractor. [Powell v. Virginia Const. Co., 88 Tenn. 692; Rapson v. Cubitt, 9 M. & W. 710; Slater v. Mersereau, 64 N. Y. 138.]'" [122 Fed., supra, l. c. 380.]

While this rule is the accepted doctrine as to non-liability of the original contractor for negligence of an independent or subcontractor, there are certain well-recognized exceptions some of which, we think, are applicable here. The general rule, with its exceptions, is stated in the note to the Salliotte case, supra, 65 L. R. A., p. 622, to be as follows: "An employer is not liable for an injury resulting from the performance of work deputed by him to an independent contractor, unless that work was positively unlawful in itself, or

the injury was a necessary consequence of executing the work in the manner provided for in the contract, or subsequently prescribed by the employer, or was caused by the violation of some absolute, nondelegable duty which the employer was bound, at his peril, to discharge, or was due to some other specific act of negligence on the part of the employer himself.''

It is also said that where the work is inherently dangerous the doctrine of independent contract is not applicable. More specifically, in so far as the present case is concerned, the rule is stated in 39 Corpus Juris, page 1335 as follows:

''While there is some authority to the contrary, it has generally been held that, where work is to be done under a contract which necessarily obstructs and encumbers a public street or highway and renders it unsafe for public travel, the doctrine of independent contractor does not apply. Liability for injuries resulting from such obstruction is to be determined as if the work had been done by the employer and not by the subcontractor. One who causes a highway to be obstructed is bound to see at his peril that a nuisance is not created.''

Likewise in 14 R.C. L., p. 97, section 34, it is said that, ''As a general rule, if one causes any work to be done which will make a street or highway extrinsically dangerous to travelers, he is liable though he employs an independent contractor to do the work. As already seen, if he makes an excavation or obstruction in the highway, he is liable unless precautions are taken to avoid injury to passers-by.'' [See also note to Pickett v. Waldorf System, 23 A. L. R., p. 1053, art. 14.]

This doctrine is recognized, we think, in the case of Wiggin v. St. Louis, 135 Mo. 558. In that case plaintiff's husband was injured by falling into an excavation in a sidewalk incidental to the erection of a dwelling house in the city of St. Louis. The owner of the building was joined with the city and endeavored to escape liability on the theory that the excavation was made by an independent contractor. In commenting on this phase of the case our Supreme Court said, ''Mrs. Marshall, the owner of the property, was joined in this suit as a party defendant with the city of St. Louis, on the charge of committing the negligent act by which plaintiff was injured. After hearing all the evidence the court was of the opinion that the owner was not liable for the injury and ordered a verdict in her favor. To this ruling the defendant city saved an exception.

''This ruling of the court must have been on the ground that the failure to properly guard the excavation was the negligent act of an independent contractor for which the owner was not responsible.

''The evidence showed that the building was erected for Mrs. Marshall, by Wittman under a contract between them. The terms of the contract do not appear from the abstract of the record fur-

nished us. In the absence of evidence in respect of the terms of the contract the jury might well have inferred that the plans and specifications for the building required the making of the excavation, which, if unguarded, rendered the street dangerous for public travel. Under the contract then the evidence tended to prove that the owner directed the contractor to make an excavation along the margin of the street, which in itself constituted a dangerous defect. The work to be done under the contract was inherently dangerous and Mrs. Marshall cannot protect herself from liability behind a contract with another. She is equally responsible for what another does under her direction as for what she does herself.''

To the same effect is Privett v. Jewett, 225 S. W. 127; Clark v. Railroad, 234 Mo. 1. c. 427, 137 S. W. 583; Milican v. Whitlow Co., 278 S. W. 1. c. 365.

In Salmon v. Kansas City, 241 Mo. 1. c. 42, 145 S. W. 16, the rule is stated as follows: ''The true rule of liability is thus stated by Dillon in his work on Municipal Corporations, section 1723, volume 4. 'Where the work contracted for necessarily constitutes an obstruction or defect in the street, of such a nature as to render it unsafe or dangerous for the purposes of public travel, unless properly guarded or protected, the employer (equally with the contractor), where the injury results directly from the acts which the contractor engaged to perform, is liable therefor to the injured party. But the employer is not liable where the obstruction or defect in the street causing the injury is wholly collateral to the contract work, and entirely the result of the negligence or wrongful acts of the contractor, subcontractor, or his servants. In such a case the immediate author of the injury is alone liable.' ''

Without citing further authorities, of which there are an abundance, it seems to us clear that defendant cannot escape liability on the theory that the failure to place lights or warning signals at or near the point where the detour commenced at the east end of the bridge in question, was the act of an independent contractor. Defendant had undisputed charge of the concrete highway leading to this bridge for a distance of at least two miles. It had, by opening this highway, invited the public to use the same and was under a duty to render such highway reasonably safe. It could not delegate that duty to another. The obstruction at the Wahite Bridge rendered the use of the highway dangerous unless a proper barricade and signal light were maintained. The duty to see that such a barricade or lights or signals reasonably calculated to warn the public of the danger, was one imposed on defendant by its contract, by the common law, and by its own act in opening the road to public travel. The action of the trial court in taking that question from the jury was therefore proper.

While other questions are raised they involve the same point here decided. A further consideration thereof seems unnecessary. The judgment should be affirmed. It is so ordered. *Cox, P. J.*, and *Smith, J.*, concur.

