325 P.2d 829

A. A. LARSEN and T. R. Larsen, Individually and as co-partners dba Larsen Contracting Company, Appellants and Cross-Appellees,

v.

ARIZONA BREWING COMPANY, Inc., an Arizona Corporation, Appellee and Cross-Appellant.

No. 6201.

Supreme Court of Arizona.

May 21, 1958.

Snell & Wilmer and James H. O'Connor, Phoenix, for appellants.

Stahl, Murphy & Blakley, Phoenix, for cross-appellees.

Jennings, Strouss, Salmon & Trask, Clarence J. Duncan and Charles L. Strouss, Jr., Phoenix, for appellee and cross-appellant.

PHELPS, Justice.

The plaintiff, Arizona Brewing Company, Inc., sued Clarence Tommy Eason, William A. Ellis, Raymond C. Reed, and A. A. Larsen and T. R. Larsen individually and as co-partners, dba Larsen Contracting Company, in negligence for damage to a truck and trailer. We shall refer to the last two defendants as Larsen Brothers. A collision on Highway 87 with a dump truck driven by defendant Eason caused the damage to the truck and trailer. Pursuant to written stipulation the court dismissed the cause as to defendants Ellis and Reed. The case proceeded to trial on two causes of action. The first, against Eason and Larsen Brothers, charged that Eason negligently drove a dump truck owned by Ellis into plaintiff's truck at a time when and place where he was "a servant and employee and under the supervision and control of" Larsen Brothers, among others. The second, against Larsen Brothers only, charged that they "were negligent in not properly warning persons travelling upon said Highway 87 that a hazardous condition existed by reason of the crossing of the trucks engaged in the prosecution of said

Larsen contract". At the close of all the evidence the court granted Larsen Brothers' motion for a directed verdict on the first cause of action of the complaint, and denied the same motion as to the second cause of action. Hence, the case went to the jury on the first cause of action against Eason only and on the second cause of action against Larsen Brothers. The jury returned a verdict against Eason and Larsen Brothers in the amount of the stipulated damages, and the court entered judgment thereon. Eason moved for a new trial; Larsen Brothers moved for judgment n. o. v. or a new trial on the second cause of action; and plaintiff moved for judgment n. o. v. or a new trial against Larsen Brothers on the first cause of action. The court denied all of these motions. Larsen Brothers appealed, and plaintiff cross-appealed, which cross-appeal it urges only in the event Larsen Brothers are successful in their appeal. Eason did not appeal.

The collision in controversy occurred at the intersection of Skousen Road with State Highway 87, approximately four miles northwest of Coolidge. When the dump truck driven by Eason was crossing Highway 87, it collided with plaintiff's truck and trailer which had been travelling on that highway. Stop signs on Skousen Road had been erected to protect through traffic on Highway 87. The dump truck carried a load of gravel from a gravel pit off Skousen Road about a mile north of the intersection and was proceeding to a point on Skousen Road about four or five miles south of the intersection where Larsen Brothers were resurfacing a six-mile stretch of road pursuant to a contract they had with the State of Arizona. This entire operation of hauling was being accomplished in effectuation of their contract with the state. About fifteen trucks were engaged in the hauling operation, such that one would cross Highway 87 in one direction or the other on an average of every three minutes.

According to facts admitted at plaintiff's request Larsen Brothers had a sign reading "Slow Truck Crossing" placed on the side of Highway 87 approximately 350 feet on either side of the intersection. According to photographs admitted in evidence the sign was placed beneath the highway department's sign that has a cross on it to warn of an intersection. The photographs reveal that the "Slow Truck Crossing" sign was clearly visible. Plaintiff's driver admitted that he saw both signs, that the "Slow Truck Crossing" sign constituted a warning to him that he had better look out for some trucks, but that he did not reduce his speed from the 45 to 50 miles per hour at which he had been travelling.

Larsen Brothers assign as error the court's denial of their motion for a directed

verdict on the second cause of action at the close of the case for the reasons, among others, that (1) the evidence did not establish a duty on the part of Larsen Brothers to erect any sign or other warning of the trucks crossing Highway 87 at Skousen Road, and (2) even assuming they owed plaintiff a duty to warn of the truck crossing, the evidence affirmatively demonstrated that the sign posted by Larsen Brothers adequately warned plaintiff's driver of the truck crossing. As to the first reason, plaintiff contended at the trial and contends in his brief before this court that Larson Brothers' contract with the state established in them a duty to warn of the trucks crossing the intersection. Plaintiff introduced in evidence the following provisions of the contract to support its contention that the contract established this duty:

"Barricades, Danger, Warning and Detour Signs—The Contractor shall at his expense and without further or other order provide, erect and maintain at all times during the progress or temporary suspension of the work such barricades, fences, warning lights, danger signals, reflectors, signs or other protective devices as are required to insure the safety of the public, those engaged in connection with the work and the work itself. This work shall be done in accordance with the Sign Manual of the Department and the following:

"At any and all points *along the work* where the nature of the construction operations in progress and the Contractor's equipment and machinery in use is of such a character as to endanger *passing traffic,* the Contractor shall erect such signs, place such lights and station such guards, watchmen and/or flagmen as may appear necessary to prevent accidents and avoid damage or injury to passing traffic. * * *

"The Engineer shall use every precaution to safeguard the person and property of the traveling public; however, the failure of the Engineer to notify the Contractor to erect and maintain barricades, lights, signs or to post watchmen, shall not operate to relieve the Contractor from his responsibility. * * * The Contractor's responsibility for the maintenance of barricades, lights and signs *on the work,* or on any individual *item or section of the work* shall cease only when such *work, item or section is completed, and/or ordered opened to the public* as hereinafter provided." (Emphasis added.)

The italicized portions of the above provisions clearly import a duty to place warning devices as necessary only in areas where the actual work of the con-

tract, in this case resurfacing, is taking place. The contract provisions did not extend this duty so as to place an obligation upon Larsen Brothers to warn the travelling public of an increase in ordinary vehicular traffic at an intersection four or five miles distant from the resurfacing work. To impose such an obligation would lead to absurdities where hauling operations by ordinary dump trucks involve the use of city streets.

■ As to the second reason noted for the first assignment of error, a cause of action in negligence requires a breach by the defendant of a duty owed to the plaintiff or a class of persons of which the plaintiff is a member. In this case the plaintiff alleges that Larsen Brothers owed to it through its driver the duty to adequately warn the driver of the trucks crossing the intersection. Even assuming that Larsen Brothers owed such a duty to plaintiff, the question becomes: Did Larsen Brothers breach that duty? Did Larsen Brothers fail to adequately warn plaintiff's driver of the trucks crossing the intersection? The evidence allows only the conclusion that the "Slow Truck Crossing" sign adequately warned plaintiff's driver. The plaintiff's driver admitted that he was warned of the crossing of trucks at what he would estimate to be about 300 feet from the intersection. That this was adequate warning there can be no

question. We believe that reasonable men cannot conclude otherwise. Under such circumstances the trial court should have granted Larsen Brothers' motion for a directed verdict on the second cause of action. Hence, we see no reason to consider Larsen Brothers' other assignments of error and therefore direct that the judgment against Larsen Brothers be vacated and judgment entered for them on the second cause of action.

In its cross-appeal plaintiff assigns as error the trial court's direction of a verdict and entry of judgment thereon in favor of Larsen Brothers on the first cause of action. Plaintiff asserts that evidence tended to show a master-servant relationship between Larsen Brothers and Eason.

First, plaintiff contends, in effect, that even if Eason was in the employ of an independent contractor, Larsen Brothers were liable for his negligent acts because of the following clause contained in their contract with the state:

"No portion of the contract shall be sublet, assigned or otherwise disposed of except with the written consent of the contracting officer or his authorized representative."

As authority for this proposition plaintiff cites Wilkey v. Rouse Construction Co., 224 Mo.App. 495, 28 S.W.2d 674. That case does not support the proposition for which plaintiff cites it. The court in

that case said that the contract requirement of consent to the subcontract could be and was waived under the evidence. The case simply holds that a general contractor cannot relieve himself of the duty to warn the travelling public of an unsafe condition created on the highway by his subcontractor where the general contractor had undisputed charge of the highway leading to the obstruction.

■ Larsen Brothers' contract with the state created an obligation to the state alone, not to the travelling public, to obtain written consent to subcontract. The alleged breach of that obligation does not impose liability upon them for injury to a member of the travelling public through a violation by a subcontractor's servant of a duty entirely collateral to that obligation. The quoted clause of the contract does not place this case within any of the exceptions to the general rule that a party is not liable for injury caused by the negligent act of an independent contractor or his servants. Neither does the quoted clause, as contended by plaintiff, present evidence for submission to the jury of a master-servant relationship between Larsen Brothers and Eason.

Second, plaintiff contends, in effect, that the evidence in this case established a sufficient conflict on the question of whether a master-servant relationship existed between Larsen Brothers and Eason to send this question to the jury. We do not agree.

The trial of the case adduced the following evidence on that issue. Larsen Brothers used in the hauling operation herein involved only four of its own trucks with drivers hired and paid directly by them. In two conversations with Reed, one shortly before and one after the state awarded the resurfacing contract to Larsen Brothers, they entered into an agreement with Reed, a trucking contractor, to furnish additional trucks for the accomplishment of this road construction job. Reed agreed to furnish sufficient trucks to handle the production of the gravel pit. According to the custom in the locality Reed supplied the drivers for the trucks he furnished. Under the agreement Larsen Brothers paid Reed 43 cents for each ton of gravel hauled. Ellis owned two of the trucks furnished by Reed. Ellis furnished his two trucks with drivers pursuant to an agreement with Reed under which Ellis also was to be paid 43 cents per ton of gravel hauled. Ellis himself drove one of his trucks. He hired Eason to drive the other and paid Eason by the hour at union scale. Ellis hired Eason in Phoenix and each drove one of the trucks from Phoenix to the work location northwest of Coolidge the day they began to participate

in the hauling operation. According to Eason's testimony he more or less followed the other trucks in the loading, weighing and hauling operations; received instructions from the "state man" on where to dump; received instructions from Ellis on where to fuel and park and load; and never remembers receiving any directions from, or even meeting, Larsen Brothers' superintendent or Mr. Larsen.

 Plaintiff maintains that we should reach the conclusion that the evidence presented a question for the jury just as this court reached that conclusion in Lee Moor Contracting Co. v. Blanton, 49 Ariz. 130, 65 P.2d 35, 36, because that case presented a similar fact situation and legal questions. On the contrary we find substantial fact distinctions, the most striking one being that in that case the truck driver was paid by the defendant who was charged with vicarious liability under the doctrine of respondeat superior. We do agree that the two cases contain similar legal questions and believe that the following law recited in that case controls the instant case:

> "It· is the law that, where it is attempted to hold one responsible in damages for the negligence of another on the principle of *respondeat superior*, it is essential to show the one committing the wrong which caused the damage

was in the doing of the act the servant of the person attempted to be charged. * * *

> " 'A servant is a person employed to perform service for another in his affairs and who, with respect to his physical conduct in the performance of the service, is subject to the other's control or right to control.' 1 American Law Institute, Agency § 220 (1933). * * *

> " 'The rule now is that, as long as the employee is furthering the business of his general employer by the service rendered to another, there will be no inference of a new relation unless command has been surrendered, and no inference of its surrender from the mere fact of its division.' * * *. Control or right to control determines liability." Lee Moor Contracting Co. v. Blanton, supra.

In the instant case no one presented any evidence to the effect that Larsen Brothers exercised any control whatsoever over Eason in his performance of driving the truck from the gravel pit to the resurfacing site.

As additional authority for the proposition that under facts such as these there is an inference that the employee continues in the service of his employer rather than becoming the servant of the person to

whom his services have been hired see Restatement, Agency § 227, comments b and c (1933). In cases which presented factors not unlike those in the instant case, other courts have held as a matter of law that the master-servant relationship did not exist between a negligent truck driver and the party to whom his general employer had hired his services. Johnson v. Royal Indemnity Co., 5 Cir., 206 F.2d 561; Billig v. Southern Pac. Co., 189 Cal. 477, 209 P. 241; Redfield v. Chelsea Coal Co., 136 Kan. 588, 16 P.2d 475; Eames v. Alexandria Contracting Co., La.App.1934, 154 So. 510. For a comprehensive discussion of this subject see Annotation, 1951. 17 A.L.R.2d 1388. The trial court correctly granted Larsen Brothers' motion for a directed verdict on the first cause of action because there was no conflict in the evidence on the question of whether a master-servant relationship existed between Larsen Brothers and Eason, and as a matter of law the evidence did not establish such a relationship.

Judgment against Larsen Brothers on the second cause of action reversed; judgment in favor of Larsen Brothers on the first cause of action affirmed.

UDALL, C. J., and WINDES, STRUCKMEYER and JOHNSON, JJ., concur.