Solomon ANGEL, Plaintiff-Appellee,

v.

SEATTLE–FIRST NATIONAL BANK, Defendant and Third Party Plaintiff-Appellant,

v.

UNITED STATES of America, Third Party Defendant-Appellant.

No. 79–4855.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 1, 1981.
Decided Aug. 17, 1981.

Susan L. Barnes, Asst. U.S. Atty., Seattle, Wash., for third party defendant-appellant.

Dale E. Kremer, Seattle, Wash, for plaintiff-appellee.

Before WRIGHT and FERGUSON, Circuit Judges, and PANNER,* District Judge.

FERGUSON, Circuit Judge:

Pursuant to a sting operation designed to catch third-party smugglers, an agent of the United States Customs Service issued a

* Honorable Owen M. Panner, United States District Judge for the District of Oregon, sitting by designation.

receipt to Angel for $260,000 in the name of the Seattle-First National Bank. Although the agent was acting with the bank's permission, the bank thereafter refused to pay Angel the money evidenced by the receipt.

Angel sued the bank for $260,000. The bank cross-claimed against the United States for whatever amounts it owed to Angel. The district court found the bank liable to Angel and the Government liable to the bank, both for the full amount. We affirm.

## I.

Plaintiff Solomon Angel is a citizen of Canada residing in Vancouver, British Columbia. In 1976, Mark Hartman, an undercover agent of United States Customs, approached Angel and offered to buy some of his and his wife's paintings.[1] The purpose of the offer was to catch suspected smugglers, unrelated to Angel, transporting paintings into the United States without making the requisite customs declaration.[2] The Government alleges that, to effectuate this purpose, it deceived Angel into selling his paintings so that they could be smuggled. Angel maintains that the Government entered into a contract to purchase the goods; he is not concerned with the purpose behind the transaction.

A Customs special agent posed as the buyer. Hartman played the part of the buyer's agent. The Angels asked $260,000 for the paintings while making no representations concerning them. Hartman agreed that his principal would pay the full $260,000. During the course of this litigation, it has been discovered that the Angels purchased the paintings for $531.25 in the early 1970's and that their present appraised value is between $2,475 and $13,000.

When the deal was ready to close, Angel insisted that the money be deposited in a bank and that the bank issue a receipt to him. Hartman brought $260,000 to the Seattle-First National Bank and placed it in a safety deposit box. A Customs officer posed as a bank employee and, with the bank's knowledge and consent, issued a receipt for the $260,000. The receipt was ultimately delivered to Angel. In exchange, Angel delivered to Hartman possession of and title to the paintings.

Once the paintings left Angel's possession, they were smuggled across the border by the targets of the sting operation. Those targets have been convicted. In addition, the paintings and the plane used to transport them have been forfeited to the Government's ownership. *See* 19 U.S.C. §§ 1462, 1581(e).

Angel sued the bank for the $260,000 evidenced by the receipt. The bank cross-claimed against the Government for indemnification of whatever amounts Angel should recover. Both plaintiff Angel and third-party plaintiff bank moved for summary judgment, which was granted respectively against the bank and the Government.

The Government concedes that the bank was acting as "an innocent tool of the Government." The Government is therefore not appealing the summary judgment against it in favor of the bank. Rather, the Government stands here in the bank's shoes appealing the summary judgment in favor of Angel.

## II.

The district court found that the bank represented it was holding funds for Angel's account, that Angel relied on the bank's representation to his detriment, and therefore that the bank was liable to Angel for the amount of those funds. As has been discussed, the United States must indemni-

---

1. Mrs. Angel has never been a party to this litigation.

2. Although the smugglers brought the goods into the country illegally by failing to declare them, no duty would have been due had the goods been declared. *See* 19 U.S.C. § 1202, Schedule 7, part 11.

fy the bank to the extent of the bank's liability. Therefore, the United States in effect has been ordered to pay Angel $260,-000 for the paintings.

The Government seeks to avoid that liability. It relies entirely on public policy in advancing its position. First, it asserts that applying traditional concepts of commercial transactions to this case would be "legal sophistry." Next, it argues that the equities weigh against Angel. Third, it adduces public policy by analogy to four branches of cases. Finally, it relies on two statutory provisions. All these arguments fail.

## A. Angel is Entitled to Recovery Under Commercial Law.

The district court found Angel entitled to recovery whether on the theory of contract, promissory estoppel, or bailment. The Government does not take issue with the substance of those doctrines. Rather, it argues that these doctrines advance policy goals which would be frustrated here by application of the established legal concepts.

■ That argument is specious. It is true, as the Government asserts, that legal doctrines develop to effectuate policy goals. But it does not follow that a court is free to ignore legal doctrine in order to serve underlying policy. If the law operated that way, there would be no need for any legal principles. Each party could argue fundamental rights, and the court could dispense intuitive justice commensurate with the equities.

■ The Government has offered no reason why the bank is not liable under commercial law. Nor has it argued that Angel does not deserve recovery under the relevant jurisdiction's commercial law. It merely asserts, without citation, that because it was "engaged in a sham to catch smugglers," normal commercial concepts are inapplicable.

It is hard to imagine that under any commercial law, the subjective intent of a party to commit a sham excuses him from contract responsibility for his action. In any event, the Government, as appellant, bears the burden of demonstrating the judgment below erroneous. It has failed to offer any reason to suspect that the court below reached an erroneous result under commercial law. Therefore, this ground furnishes no basis for reversal.

## B. The Equities Favor Angel.

■ The Government devotes so much of its effort on appeal to contentions of public policy that it is well to reflect on the parties' relative equities. These tilt decisively in Angel's favor, even though he thereby reaps windfall profits out of his transaction with the Government.

The Government tries to cast Angel in the role of an underworld figure, but the record contains no evidence that he is less than law-abiding. Further, on the facts of this case it is difficult to perceive what illegitimate motive Angel may have had. Even had he known that the paintings were to be smuggled, he could not derive any benefit thereby because there was no customs fee to cheat—the art could be taken into the United States duty-free, as Angel informed Hartman. *See* 19 U.S.C. § 1202, schedule 7, part 11.

For aught that appears in the record, Angel is an angel. The same cannot be said of the Government. Its agents impersonated both a buyer and his agent, setting up the purchase from Angel solely for the purpose of trapping suspected smugglers. That purpose has now been accomplished—four convictions have been won, the smuggled artworks and an airplane have been forfeited. Having achieved its objective by the use of Angel's artwork, the Government now wants to ignore its agreement with Angel.

The Government claims that it should not have to pay Angel the amount bargained for his art. However, it does not advance any legal theory such as mistake of fact or

failure of consideration. Rather, it asserts that it should not be held to its contract because it foolishly agreed to pay one hundred times more than it would receive. That fact, however, is not persuasive.

The Government maintains that

[s]ince the United States is legally entitled to keep the smuggled art as forfeited, plaintiff [sic] claims to the value of it should be as invalid as his claim to return the goods since he has failed to petition for them.

All the Government need do under this reasoning is to send its agents to the home of a wealthy foreign citizen, offer the owner millions of dollars for various *objets d'art*, take delivery, have the goods smuggled across the border, keep the goods pursuant to the statutory forfeiture power, and then tell the hapless former owner that he has no rights in his former property, either to its value or to the benefit of his bargain with the Government.

Equity strongly favors Angel.

### C. Public Policies Do Not Favor the United States.

The Government forthrightly admits that no case has been found on point. It seeks nonetheless to overturn the judgment below by analogizing to four different public policies. None is relevant.

#### 1. Forfeiture Cases.

■ First, the Government cites various forfeiture cases, notably *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). That case held that the lessor of a yacht could not complain of the yacht's forfeiture after a lessee had been caught on board with one marijuana cigarette. *Pearson* affords the Government no support. The yacht in that case was seized pursuant to a statute which provided for the forfeiture of any vessel used to transport controlled substances. *Id.* at 665–67, 94 S.Ct. at 2082–84. Thus, at the time the yacht was seized, it was being used in contravention of the statute.

The relevant statute in the instant context provides for the forfeiture of smuggled goods. Pursuant to that statute, the artworks have been forfeited to the Government subsequent to their being smuggled across the border. At all times of Angel's involvement, however, his artwork was used for legal activity. In order for *Pearson* to apply to Angel, its holding would have to be extended so that the yacht could be forfeited if used by lessees who subsequent to their disembarkation from the yacht possessed marijuana. The only similarity between *Pearson* and the position which the Government urges in the instant case is that in each an innocent party must stand helpless while the Government expropriates his property. We decline to extend *Pearson* to embrace the facts of this case.

#### 2. Purchase Money Cases.

■ The Government cites two cases that deny the return to a guilty party of monies obtained from him. Angel, however, was not a guilty party. He is not in a position analogous to the purchaser of heroin, *see United States v. Farrell*, 606 F.2d 1341 (D.C. Cir. 1979), or the payor of bribe moneys, *see United States v. Wilson*, 591 F.2d 546 (9th Cir. 1979). Rather, he is an innocent victim caught in the middle of a scheme to trap smugglers. The foregoing cases afford the Government no help.

#### 3. Prosecuted Innocent.

■ The Government cites three cases evincing a policy not to hold the Government responsible for pain and suffering inflicted on an innocent individual who is the target of an investigation. In the instant case, Angel is suing for the benefit of the bargain of a contract into which he entered with the Seattle-First National Bank. The relevance of the Government's cases is not apparent.

#### 4. Immunity.

■ Finally, the Government traces the immunity from tort suit enjoyed by Govern-

ment officers and by others who follow lawful orders. Its discussion does not, however, deal with the liability of the Government itself nor does it concern contract actions. That discussion is accordingly not germane to the instant case.

## D. The Government Enjoys No Statutory Protection.

■ The Government cites 19 U.S.C. §§ 507–508 as a defense to Angel's action. Section 507 makes it a crime for a private individual to refuse to aid a customs officer under specified circumstances. Since it is a criminal statute, it affords no defense to a contract defendant. Section 508 grants immunity from suit to the officer, as well as to the private individual commanded by § 507 to help the officer, when either of these have been "executing or aiding or assisting in the seizure of goods . . . ." The instant case involved a seizure of goods only after Angel's involvement was terminated. Accordingly, § 508 as well cannot be used as a defense against Angel.

## III.

■ The Government claims that numerous conflicts exist as to the facts which make the issuance of summary judgment inappropriate. Viewing the evidence in the light most favorable to the party opposing the judgment, we must affirm if no genuine factual dispute exists. *Johnson v. Mateer*, 625 F.2d 240, 242 (9th Cir. 1980). In light of this standard and the facts as culled from the Government's brief, we perceive no error in the judgment below.

## A. Conclusory Allegations Cannot Defeat Summary Judgment.

■ The Government contends first that a genuine dispute exists because it may be able to prove at trial that Angel misled the Customs agents, that he had knowledge of the smuggling that was to take place, and that he was on notice that the transaction was dishonest. If these propositions were proven at trial, they might establish that the Government, rather than Angel, deserved to win. But the Government has not cited any portion of the record that demonstrates or even implies the validity of its propositions. A motion for summary judgment cannot be defeated by mere conclusory allegations unsupported by factual data. *Marks v. United States (Dept. of Justice)*, 578 F.2d 261, 263 (9th Cir. 1978). *See Klopfenstein v. Pargeter*, 597 F.2d 150, 151–52 (9th Cir. 1979) (conclusory affidavit inadequate).

■ The Government further contends that Angel "misrepresent[ed] his goods to what he thought was a rich potential California buyer." Angel staunchly denies this. Since misrepresentation could serve to vitiate the contract between Angel and the bank, summary judgment would have been inappropriately entered if the record evidences conflict on this important point.

The Government relies for its assertion on the fact that "[t]he nature of the sale, the true value and identity of the art sold as contrasted to its represented value is still in dispute." These facts, however, do not establish misrepresentation. They merely show carelessness on the part of a buyer that failed to investigate the value of goods for which it offered $260,000. There is no evidence in the record that Angel said or did anything to mislead the Customs officers. The record accordingly does not evidence any conflict as to misrepresentation.

## B. The Remaining Factual Disputes Are Irrelevant.

■ The Government also emphasizes the following view of the facts. Negotiations to purchase the paintings occurred in both the United States and Canada. Prior to the consummation of the transaction, Angel was willing to accept payment in cash. Mrs. Angel spoke at length to the Customs agents, who were not art experts and who did not subjectively intend to purchase the paintings on behalf of Customs.

The Government's brief provides no enlightenment as to the relevance of these disputed facts. In order for a "genuine issue as to any material fact" to preclude entry of summary judgment, Fed.R.Civ.P. 56(c), the party opposing summary judgment must demonstrate

> the existence of a legal theory which remains viable under the asserted version of the facts, and which would entitle the party opposing the motion (assuming his version to be true) to a judgment as a matter of law.

*Friends of the Earth v. Coleman*, 513 F.2d 295, 298 (9th Cir. 1975), *quoting McGuire v. Columbia Broadcasting System, Inc.*, 399 F.2d 902, 905 (9th Cir. 1968). The Government in the instant case has offered no such theory. Accepting its version of the facts, no impediment to summary judgment in favor of Angel appears.

### IV.

The Government was not allowed to intervene as a defendant in the proceedings below. Instead, it played the role of third-party defendant in the bank's cross-claim. The Government now claims that reversal is required on the basis of its failure to be certified as an intervenor. That contention is without merit.

██ Angel's suit against the bank sounded in contract. The Government wished to intervene as a defendant to that action. The Government's participation as a defendant in contract suits is governed by statute. Title 28, United States Code, § 1346 vests jurisdiction over such claims in the district courts only when the amount claimed does not exceed $10,000. The Court of Claims has jurisdiction over contract actions against the United States in excess of that amount. 28 U.S.C. § 1491. Since Angel's suit against the bank prayed for $260,000 in relief, the district court was without jurisdiction to allow the Government to intervene as a defendant.[3]

██ Moreover, the Government was a third-party defendant in the bank's cross-claim. A third-party defendant may assert any defenses which the third-party plaintiff has against the plaintiff. Fed.R.Civ.P. 14(a). The Government has not shown that it suffered any prejudice by being a third-party defendant instead of an intervenor. Accordingly, it cannot complain of the fact that it was not certified as an intervenor.

AFFIRMED.

---

**3.** The bank's cross-claim against the Government was phrased entirely in tort. Jurisdiction over that claim properly lies in the district courts. 28 U.S.C. §§ 1346, 2674.