51 F.3d 279
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Mary Jo CASE, surviving spouse of Steven Todd Case, for and
on behalf of herself and her minor children Jessica Erin
Case, Matthew Adam Case, and Joanna Elizabeth Case; and
Carol Jean Case, surviving parent of Steven Todd Case,
deceased, Plaintiffs-Appellants,
v.
BRIDGESTONE/FIRESTONE, INC., an Ohio corporation Defendant-Appellee.
 No. 93-16771.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 16, 1995.
Decided March 15, 1995.
 
 1
 Before: SNEED, O'SCANNLAIN, Circuit Judges, and MERHIGE, Senior District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Mary Jo Case and others ("Appellants") appeal the district court's summary judgment in favor of Bridgestone/Firestone, Inc. ("Appellee") in this wrongful death diversity action. This Court has jurisdiction under 28 U.S.C. Sec. 1291.
 
 I.
 
 4
 At the time of the incident giving rise to this matter, Appellee was affiliated with a Mexican tire manufacturer named Hulera el Centenario, S.A. ("Hulera"). In addition to a minority equity interest, Appellee was associated with Hulera by means of a Technical Services Agreement ("TSA"), which provided, inter alia, that Appellee, upon Hulera's request, would assign technical and non-technical personnel to "assist" Hulera in various operational and administrative areas. Any personnel so assigned were to be compensated by Hulera, and Hulera was responsible for reimbursing Appellee for both relocation expenses and a portion of certain overhead expenses associated with such employees. Finally, the relationship between Hulera and Appellee was further defined by the seating of one Appellee executive, C.L. Balmaseda, Director of Affiliates and Export Sales, on Hulera's board of directors.
 
 
 5
 The "managing director" of Hulera in 1990 was Rajive Soni, who had been assigned to Hulera pursuant to the TSA. While Soni was compensated by Hulera, his work was evaluated by Balmaseda. Such evaluations, however, were subject to the review of the Hulera board. The record also reveals that Soni, as Hulera's managing director, was responsible for developing performance objectives, which were reviewed by Balmaseda and generally approved by the foreign board. Balmaseda became involved only to the extent that "something glaring" required commentary. E.R. 4, Ex. B at 83-84.
 
 
 6
 On October 11, 1990, Soni, Stephen Case (the decedent) and two other Hulera employees were travelling in Mexico when the Hulera-owned car in which they were travelling was involved in an accident. The driver of the car, Norberto Becerra Martinez, was a Mexican national and a Hulera chauffeur. All occupants of the vehicle were killed.
 
 
 7
 On Appellee's motion for summary judgment, the district court held that Appellants offered "no evidence showing a relationship between Martinez and Bridgestone to constitute an action under the various theories of respondeat superior," and granted Appellee's motion. E.R. 5 at 11. In so holding, the district court ruled the affidavit of Vijay Soni, Rajive Soni's wife, inadmissible, and did not give preclusive effect to a factual finding of the Ohio Industrial Commission.
 
 II.
 A. Exclusion of Soni affidavit
 
 8
 The district court concluded that the affidavit of Vijay Soni "is improper and inadmissible because Mrs. Soni's statements were conclusory and not based on personal knowledge." E.R. 5 at 7 n. 3; see E.R. 4, Ex. H (Soni affidavit). On appeal, the district court's evidentiary ruling is reviewed for abuse of discretion. Barthelemy v. Air Lines Pilot Ass'n, 897 F.2d 999, 1018 (9th Cir.1990) (citing Kisor v. Johns-Manville Corp., 783 F.2d 1337, 1340 (9th Cir.1986)).
 
 
 9
 Whether or not an affidavit opposing a summary judgment motion is admissible is determined by Federal Rule of Civil Procedure 56(e), which provides, in part, that affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." F.R.Civ.P. 56(e). A party responding to a summary judgment motion "must set forth specific facts showing that there is a genuine issue for trial." Id.
 
 
 10
 Appellants correctly note that competence and personal knowledge can be inferred when the affiant's bears a sufficiently close relationship to the matter to which he or she is swearing. Barthelemy, 897 F.2d at 1018. Specifically, the Rule 56(e) requirements can be "reasonably inferred from [the affiant's] position[ ] and the nature of [his] participation in the matters to which [he] swore." Id.
 
 
 11
 Unlike the affiant in Barthelemy, however, Mrs. Soni does not bear the requisite relationship with a substantial portion of the subject matter of her affidavit. Specifically, the affidavit sets forth no facts demonstrating that she was so involved in her husband's unique employment relationships with Hulera and Appellee that a reasonable inference of personal knowledge or competence exists as to his compensation and benefits, his status under the TSA, and the nature of his relationship with either Balmaseda or Martinez. Accordingly, the district court did not abuse its discretion in ruling the affidavit inadmissible.[1]
 
 
 12
 Since the affidavit was properly excluded, it is uncontroverted that Soni reported to the Hulera board, not Balmaseda.[2] In addition, it is uncontradicted that Hulera was responsible for compensating Soni. Finally, despite evidence that it is not uncommon for key personnel assigned to foreign locations to be assigned a driver, there is no evidence in the record that Martinez was "assigned" to Soni as a driver on October 11, 1990.
 
 
 13
 B. Failure to give preclusive effect to Industrial Commission ruling
 
 
 14
 Appellants contended below that a finding of fact by the Ohio Industrial Commission ("Commission"), rendered in relation to a workman's compensation claim filed by Mrs. Soni, should have been given preclusive effect because such findings are to be "afforded full faith and credit" by federal courts.[3] The district court disagreed because the matter was on appeal and, thus, not a final and binding decision. E.R. 5 at 7 n. 2. The availability of collateral estoppel is reviewed de novo. Davis & Cox v. Summa Corp., 751 F.2d 1507, 1519 (9th Cir.1985).
 
 
 15
 In order for the doctrine of collateral estoppel, or issue preclusion, to apply under Arizona law, there must be a final and binding judgment. Gilbert v. Bd. of Medical Examiners, 745 P.2d 617, 622 (Ariz.Ct.App.1987).[4] Under both Arizona and Ohio law, the findings of an administrative agency become "final and binding" when the time for appeal has passed without a party pursuing its right of appeal. Guertin v. Pinal County, 875 P.2d 843, 845 (Ariz.Ct.App.1994); Pierce v. Sommer, 308 N.E.2d 748, 749 (Ohio 1974). Thus, where an appeal has been filed, the administrative decision is not final and binding, and any issues determined by the agency should not be given preclusive effect. In the instant matter, the Commission's decision regarding the Soni claim had been appealed; thus, the district court's rejection of Appellants' collateral estoppel argument was proper.
 
 C. Summary judgment
 
 16
 Appellants advance several theories of respondeat superior in support of their contention that Appellee is liable for Martinez' negligence: (1) the dual master relationship; (2) the loaned servant relationship; and (3) the subservant relationship. Appellants also assert that Appellee is liable through its affiliate relationship with Hulera. In granting summary judgment, the district court rejected these theories on a finding that there was "no evidence showing a relationship between Martinez and Bridgestone to constitute an action under the various theories of respondeat superior." E.R. 5 at 11. We review summary judgment de novo. United States v. State of Cal., 932 F.2d 1346, 1347 (9th Cir.1991), aff'd, 113 S.Ct. 1784 (1993).
 
 
 17
 Summary judgment is appropriate where parties do not dispute material facts that might affect the outcome of an action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see Fed.R.Civ.P. 56. Under Rule 56, the movant bears the burden of offering proof of the absence of any genuine issues of material fact, and the Court must view the facts and the inferences drawn therefrom in the light most favorable to the non-moving party. Id. at 248, 256. Once the movant has met this burden, the non-moving party must set forth specific facts with affidavits, depositions, interrogatories or other evidence to show a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
 
 
 18
 Under Arizona law, issues of respondeat superior, including existence of a master-servant relationship, should ordinarily left to the jury. Williams v. Wise, 476 P.2d 145, 148 (Ariz.1970). Nevertheless, "the determination of that relationship may become one for the court, where the evidence is clear and uncontradicted." Id. (citing Lee Moor Contracting Co. v. Blanton, 65 P.2d 35 (1937)). Thus, where a party offers insufficient evidence in support of a theory of vicarious liability, the court may decide the issue as a matter of law. Larsen v. Ariz. Brewing Co., Inc., 325 P.2d 829, 834 (Ariz.1958).
 
 
 19
 According to the Restatement (Second) of Agency, a servant may act for two masters.
 
 
 20
 A person may be the servant of two masters, not joint employers, at one time as to one act, if the service to one does not involve abandonment of the service to the other.
 
 
 21
 Restatement (Second) of Agency Sec. 226. Appellants propose that Martinez was serving both Hulera and Appellee on October 11, 1990, and that Appellee can therefore be held liable "so long as the servant acted in both masters' interests in performing the act." O.B. at 11.
 
 
 22
 While one may be a servant for two masters, a master-servant relationship must, in fact, exist. This relationship is created when the individual for whom services are rendered consents to receiving such services as a master, and exercises control or the right to control over the one providing the service. Restatement (Second) of Agency Secs. 221 & 226. The fact that one acts to benefit another or subjects himself to the control of another is insufficient to establish the master-servant relationship absent consent by the receiving party. Id. at Sec. 225 cmt. c.
 
 
 23
 The record is void of any evidence that Martinez was serving two masters on October 11, 1990. The record reveals only that Martinez was a Hulera chauffeur acting within the scope of his responsibilities on October 11, 1990. To begin, there are no facts permitting a reasonable inference that Martinez was providing services specifically for Mr. Soni on the date of the accident. Even if it could be established that Martinez was serving Soni, there is no evidence that Martinez was acting on behalf of Appellee. In order to arrive at such a conclusion, there would have to be a clearly defined master-servant relationship between Soni and Appellee, which the record fails to establish. In fact, the record demonstrates the opposite conclusion--that the right to control Soni was vested in the Hulera board of directors. Accordingly, Appellants cannot prevail on their dual master theory.
 
 
 24
 Appellants also argue that Appellee is liable under the loaned servant doctrine in that Hulera loaned Martinez to Appellee. On this issue, the Restatement is again instructive:
 
 
 25
 A servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services. He may become the other's servant as to some acts and not as to others.
 
 
 26
 Restatement (Second) of Agency Sec. 227. Unless contrary evidence exists, "there is an inference that the actor remains in his general employment, so long as, by the service rendered another, he is performing the business entrusted to him by the general employer." Id. cmt. b; see Restatement (Second) of Agency Sec. 227 cmt. c, illus. 1.
 
 
 27
 Arizona courts have adopted the Restatement's inference that an employee remains in the employ of his general employer. Larsen, 325 P.2d at 834. A relationship with the one to whom services are rendered will only be established where "command [over the employee] has been surrendered." Larsen, 325 P.2d at 834 (citing Lee Moor, 65 P.2d at 36). Surrender will not be inferred merely because direction and control have been divided. Id.
 
 
 28
 The record indicates that the district court correctly concluded that Appellants failed demonstrate that a loaned servant relationship between Martinez and Appellee may be reasonably inferred. To begin, there is absolutely no evidence that Hulera directed or permitted Martinez to work directly for Appellee. In acknowledgement of that fact, Appellants attempt to impose liability on Appellee by arguing that Martinez was lent to Appellee, through Soni. Again, however, the facts wholly fail to permit a reasonable inference that Appellee had the right to control Soni. Finally, Appellants have provided no evidence that Hulera surrendered the right to control and direct Martinez to either Soni or Appellee. Thus, the Court concludes that the inference that Martinez remained in the employ of Hulera remains intact.
 
 
 29
 Appellant's third argument is that Martinez, through Soni, was a subservant of Appellee and that Appellee is vicariously liable for Martinez' alleged negligence. A subservant is
 
 
 30
 a person appointed by a servant empowered to do so, to perform functions undertaken by the servant for the master and subject to the control as to his physical conduct both by the master and by the servant, but for whose conduct the servant agrees with the principal to be primarily responsible.
 
 
 31
 Restatement (Second) of Agency Sec. 5(2). Where this "relatively rare" relationship exists, the subservant's employer and the employer's master may be liable for the subservant's torts committed within the scope of his employment. Id. at cmts. e & f.
 
 
 32
 Even if the Court assumes that Soni can properly be characterized as Appellee's servant, a review of the record plainly reveals that there are no facts even suggesting that Appellee empowered Soni to hire Martinez. More importantly, there is no evidence that Martinez was appointed by Soni. To the contrary, the only reasonable inference to be drawn from the record is that Martinez, a Hulera chauffeur, was appointed by Hulera so that the occupants of the vehicle could conduct Hulera business on October 11, 1990. Finally, the record fails in every respect to show that Martinez' physical conduct was controlled by either Soni or Appellee, let alone both of them as required by the Restatement. Restatement (Second) of Agency Sec. 5(2). Thus, Appellants' subservant theory is meritless.
 
 
 33
 Finally, Appellants assert that a corporation conducting business through an affiliate can be liable for the negligence of the affiliate's employees where the corporation manifests control over the affiliate through the placement of "key personnel." In support of this proposition, Appellants cite Luckett v. Bethlehem Steel Corp., 618 F.2d 1373 (10th Cir.1980), in which the court determined that a reasonable inference may exist that the defendant corporation, through a management agreement, had significant power to control the manner and method of operation of a 70% owned foreign subsidiary. Id. at 1378-82. On this basis, the court concluded that the defendant, once its management team of ten key executives took control of the subsidiary, could reasonably be found directly liable for negligent selection of the management team and vicariously liable for any negligent acts or omissions committed by the management team. Id. (citing Restatement (Second) of Torts Sec. 324A).
 
 
 34
 Appellant's reliance on Luckett is misplaced as critical factual differences exist between that case and the instant matter. For instance, Appellants have not presented evidence sufficient to permit a reasonable inference that Appellee, a minority stakeholder in Hulera, possessed a "substantial" power of control over Hulera's operations. Indeed, the record discloses that Appellee had only one representative on the Hulera board of directors, and that managing director Soni, while assigned to Hulera by Appellee, was controlled by the Hulera board. Second, the record is absolutely void of any evidence suggesting that Appellee was negligent in sending Soni to work for Hulera under the terms of the TSA or that Appellee was responsible for hiring Martinez. Finally, there is no factual basis for any assertion that Soni acted negligently in his purported relationship with Martinez. Quite simply, there is no evidence permitting a reasonable inference that Appellee can be held liable on the bases articulated in Luckett.
 
 IV.
 
 35
 In summation, we conclude that the district court did not err in either holding the Soni affidavit inadmissible or refusing to give preclusive effect to the finding of the Ohio Industrial Commission. Moreover, the district court properly granted Appellee's motion for summary judgment. Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 **
 This disposition is not suitable for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The affidavit was also properly excluded because Appellants fail to establish the validity of the conclusory allegations contained therein, either directly or impliedly. Angel v. Seattle-First Nat'l Bank, 653 F.2d 1293, 1299 (9th Cir.1981). It is well established that conclusory affidavits, "not backed up by statements of fact ... cannot defeat a motion for summary judgment." Shane v. Greyhound Lines, Inc., 868 F.2d 1057, 1061 (9th Cir.1989) (citing Angel, 653 F.2d at 1299). While Appellants argue that the affidavit is supported by citations to their statement of facts in opposition to summary judgment, a review of that pleading reveals that Appellants merely refer back to the affidavit and little else
 
 
 [2]
 At most, the record reveals that Soni maintained some undefined "rapport" with Appellee's executives. See E.R. 4, Ex. A at 63-64 (deposition of Donald Oakey, Appellee's personnel manager); Ex. B at 75 (deposition of Balmaseda)
 
 
 [3]
 The Commission found that, "On October 11, 1990, Rajive Soni was employed by Bridgestone/Firestone, Inc." See E.R. 4, Ex. J
 
 
 [4]
 Arizona courts apply the following test in deciding whether the doctrine of collateral estoppel applies
 The elements necessary to invoke collateral estoppel are: the issue is actually litigated in the previous proceeding, there is a full and fair opportunity to litigate the issue, resolution of the issue is essential to the decision, there is a valid and final decision on the merits, and there is a common identity of the parties.
 Gilbert, 745 P.2d at 622 (citations omitted). While this test articulates a mutuality requirement, Arizona courts have endorsed both defensive and offensive use of collateral estoppel by non-parties to a previous action. See e.g., Chaney Bldg. Co. v. Tucson, 716 P.2d 28 (Ariz.1986) (defensive); Wetzel v. Ariz. State Real Estate Dept., 727 P.2d 825 (Ariz.Ct.App.1986), cert. denied, 482 U.S. 914 (1987) (offensive).