476 P.2d 145

Jack WILLIAMS dba Jack Williams Trucking Company, and Doyle Sander, Appellants,

v.

Annisa WISE, Appellee.

No. 9854.

Supreme Court of Arizona,
In Division.

Nov. 6, 1970.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Ralph E. Hunsaker, Phoenix, for appellant Williams.

Jennings, Strouss & Salmon, by William R. Jones, Jr., and Jon L. Kyl, Phoenix, for appellant Sander.

Gorey & Ely, by Herbert L. Ely, Phoenix, for appellee Wise.

UDALL, Justice.

This matter is before us on appeal from a judgment entered in favor of the plaintiff, Annisa Wise, in the Superior Court of Maricopa County awarding the plaintiff $79,400 in damages for the wrongful death of her husband. For the reasons advanced below, we reverse and remand for a new trial.

Plaintiff, Annisa Wise, brought a wrongful death action against Jack Williams, dba Jack Williams Trucking Company, and against Doyle Sander, a truck driver for Williams, for the death of her husband, Ruben Wise, at a highway-construction site in the vicinity of Black Canyon City north of Phoenix. Plaintiff alleged that Sander, while driving a truck for Williams Trucking Co. and while acting within the scope of his employment, negligently drove a large "bellydump" truck over the decedent, who was working at the construction site at the time.

On the day of the accident, defendant Sander was driving a 1965 International tractor with a bellydump trailer which was owned by Williams Trucking Co. and with

which Sander was delivering gravel to the construction site. Decedent Wise was employed by the general contractor as a "dump man"; his responsibility was to measure off the distance that the load in each truck was to be dumped and to direct the driver as to where to begin and end his dump. Just prior to the accident Wise had directed Sander where to dump his load of gravel and Sander had completed his dump. Sander then pulled away from the "window" of gravel he had just dumped, straightened out his tractor and trailer, and began to back up to a place where the job foreman was standing in order to get the daily ticket signed so that Sander and Williams could get paid for the hours that Sander and the truck had worked. When Sander began to back up, Wise was standing alongside the truck on the driver's side about halfway toward the back. He began gathering up his tape measure as he trotted alongside the backing truck. When he cleared the back end of the truck he turned and crossed over into its path. He then stopped to uncover some of the tape and bent over in order to pull it from under the dirt. While he was bent over he was struck by the right rear portion of the tractor-trailer and was run over by the wheels of both the trailer and the tractor. He apparently lived only a few minutes.

At the trial the jury returned a verdict in favor of the plaintiff, Annisa Wise, and against defendants Sander and Williams, and fixed damages in the sum of $79,400. Judgment was entered in accordance with the verdict.

On appeal, defendants Sander and Williams raise several assignments of error, which can be summarized as follows:

I. *Restricted Opening Statement*: Where there were two defendants, it was error for the trial court to refuse to allow the attorney for each to make a complete opening statement to the jury by instructing the second attorney to cover only matters not covered by the first.

II. *Loaned Employee*: The question of whether Sander was an employee of the general contractor rather than of Williams Trucking Co. at the time of the accident (under the "loaned servant" doctrine) was a question of fact which should have been presented to the jury, and it was error for the trial court to direct a verdict in favor of the general contractor and against Williams.

III. *Contributory Negligence*: The trial court was in error in instructing the jury that for the conduct of the plaintiff to constitute contributory negligence, it was necessary that it "combine" with the negligence of defendant Sander in proximately causing the plaintiff's injuries.

IV. *Gross and Wanton Negligence*: It was improper and prejudicial for the trial court to give an instruction on gross and wanton negligence, as the evidence of the case did not show conduct by defendant Sander which would merit the giving of the instruction.

We will deal with the assignments of error in the order listed above.

## I. RESTRICTED OPENING STATEMENT

At the trial the court granted a motion by counsel for the plaintiff and ruled that the defense attorney making the second opening statement to the jury had to restrict his statement to a statement of matters not already covered by the first defense attorney. This apparently was done because there was a similarity of interest, to a large extent, between the positions of the two defendants. It would appear, however, that there was also a definite conflict of interest between the two defendants, particularly as to the issue of whether Sander was an employee of the general contractor rather than of Williams at the time of the accident, under the "loaned servant" doctrine.

A review of the record reveals that there were many facts presented at trial, some of which were previewed in the opening statements, which had a bearing, not only on how the accident occurred, but also on the issue of employment. The court's ruling placed the two defense attorneys in the difficult position of having to determine which one would speak to which issues. Had there been complete agreement as to the facts of the case, perhaps no problem would have been presented. However, there was obvious disagreement, particularly as to the evidence relating to the question of employment, with the probable result that neither defense attorney made the opening statement to the jury which he otherwise would have made. In addition, the two defense attorneys no doubt had different methods of representing their respective clients even as to issues upon which they may not have been in direct conflict. Each attorney should have been allowed to try the lawsuit for his client as he saw best.

We do not find it necessary to reach the question of whether there may be some situations in which it would be proper for the trial court to impose this type of limitation on opening statements to the jury. We simply hold that under the circumstances of this particular case it was error for the trial court to require the second defense attorney to restrict his opening statement to a statement of matters not already covered by the first defense attorney.

## II. LOANED EMPLOYEE

The truck which ran over decedent Wise was owned and maintained by Williams Trucking Co., and the driver of the truck, defendant Sander, received his salary from Williams. Williams provided the use of the truck and driver at a flat rate of $16.00 per hour to the general contractor who had contracted with the state to build the road.

The general contractor made arrangements for the site from which the road materials were to be obtained and told the drivers where to pick up the materials, where the job site was, and where and when to dump their loads. The general contractor told the drivers when they were through for the day and when they were needed the next day. The job foreman testified that it was his job to see that the plans of the state were complied with and, more particularly, to see that the trucks were operated safely on the job. He also testified that he had on previous occasions given instructions to the drivers of the trucks relative to their driving on the highway and job site. Defendant Sander testified that he felt obligated to comply with directions given him by the job foreman, particularly with respect to whether he backed his truck up on the job.

Based on this factual situation, defendant Williams contends that even though Williams Trucking Co. owned the truck and paid the driver, the degree of control which the general contractor exercised over the truck and driver, especially at the jobsite, was sufficient to bring defendant Sander under the "loaned servant" doctrine so as to make the general contractor liable for the accident under the doctrine of respondeat superior.

The issue raised here is discussed comprehensively in an annotation at 17 A.L.R. 2d 1388 entitled "Liability Under Respondeat Superior Doctrine For Acts of Operator Furnished With Leased Machine or Motor Vehicle". The annotation deals at some length with the specific question of who is liable for injury or damage caused by a truck owned by one party but loaned or hired out to another and operated by an employee of the owner. There is a great variety in the treatment of the cases, depending on the particular factual situation and the policy of the particular jurisdiction.

The annotation states the well-settled rule that "a servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services." Restatement of Agency, Second, § 227. However, as

the annotation points out, it is only in certain instances that a servant's shift from the service of one master to that of another, with the accompanying shift of responsibility under the respondeat superior doctrine, occurs. The question to be answered, then, is that of what factors must be present in such instances. The key word is "control", which relates to the right of control over the performance of the work to the extent of prescribing the manner in which it is to be executed. It is the right to control, rather than the actual exercise of control, that points to the one having that right as master. The existence of the relationship is generally said to be one of fact for the jury, from whose findings appellate courts will depart only in extreme cases, rather than one of law for the court.

In their briefs the parties have cited three Arizona cases as authority on the "loaned servant" question. Those cases are Lee Moor Contracting Co. v. Blanton, 49 Ariz. 130, 65 P.2d 35 (1937); Larsen v. Arizona Brewing Co., 84 Ariz. 191, 325 P.2d 829 (1958), and Throop v. F. E. Young & Co., 94 Ariz. 146, 382 P.2d 560 (1963). The first two cases deal specifically with the "loaned servant" question; the third does not deal specifically with that question but does discuss in some detail the question of the degree of control which is necessary in order to hold an employer liable under the doctrine of respondeat superior.

As to the question of whether the issue of employment should have been submitted to the jury as a question of fact rather than being decided by the court as a question of law, we refer to Lee Moor Contracting Co. v. Blanton, supra, wherein this Court stated that:

"While, perhaps, there is no conflict in the evidence as to whose servant Wilson was at the time of the accident in which Blanton was injured, we think the evidence leaves this issue in so much doubt that reasonable persons might well come to different conclusions as to who had the control or right of control at the

time. When such is the case its solution, under proper instructions, is for a jury. The annotators in Densby v. Bartlett, supra, 42 A.L.R. 1418, say:

" 'Ordinarily, the relation of master and servant is left for the jury to determine under proper instructions, though, as will be observed from some of the cases, the determination of that relationship may become one for the court, where the evidence is clear and uncontradicted. * *' The evidence is not clear.

"The company's motion for an instructed verdict at the close of the case was properly denied." 49 Ariz. at 140–141, 65 P. 2d at 39.

In Larsen v. Arizona Brewing Co., supra, on the other hand, this Court held that:

"The trial court correctly granted Larsen Brothers' motion for a directed verdict on the first cause of action because there was no conflict in the evidence on the question of whether a master-servant relationship existed between Larsen Brothers and Eason, and as a matter of law the evidence did not establish such a relationship." 84 Ariz. at 199, 325 P. 2d at 834.

However, it should be kept in mind that in reaching the above conclusion, we stated that:

"In the instant case no one presented any evidence to the effect that Larsen Brothers exercised any control whatsoever over Eason in his performance of driving the truck from the gravel pit to the resurfacing site." 84 Ariz. at 198, 325 P.2d at 834.

In the case at bar defendant Williams presented evidence to the effect that the general contractor *did* exercise control over defendant Sander, particularly as to his handling of the truck at the jobsite.

█ We have found it necessary to remand this case for a new trial on the grounds stated elsewhere in this opinion. At the new trial the evidence presented on the "loaned servant" issue may shed additional light on the subject. At the new

trial, therefore, if the evidence presented leaves the issue in so much doubt that reasonable persons might well come to different conclusions as to who had the control or right of control at the time of the accident, the issue should be submitted to the jury. If the evidence is clear and uncontradicted, the issue should be decided by the court.

## III. CONTRIBUTORY NEGLIGENCE

■ The two instructions given to the jury by the trial court on the subject of contributory negligence were as follows:

"Now, contributory negligence is negligence on the part of, in this case, Mr. Wise which *combining with the negligence of the defendant* contributed to proximately causing the injury to the plaintiff.

"If the conduct of both Mr. Wise and the defendant, Doyle Sander, was negligent and if the negligence of each considered separately was the proximate cause of the accident it is immaterial who was more negligent. In such a case the plaintiff should not recover." [Emphasis added.]

The above instructions are the MARJI No. 10 instructions on contributory negligence, with the first instruction commonly referred to as the primary instruction and the second as the alternate instruction. It is argued by the defendants that the instructions should not be given together and that the primary instruction incorrectly states the law. Particular exception is taken to the use of the phrase "combining with the negligence of the defendant" in the first paragraph, in that it requires a finding that both plaintiff and defendant were guilty of negligent conduct and that the negligent conduct of each "combined" to proximately cause the injury.

Defendants assert that there has never been any question but that the negligence of a plaintiff and a defendant may consist of two separate and distinct acts of negligence, either one of which might be the proximate cause of the plaintiff's injuries,

and that the plaintiff's negligence, in such a case, may be contributory negligence, and that it has never been required that the only negligence of the plaintiff which can be termed contributory negligence is that which combines with the defendant's negligence to produce the injury.

In Macdonald v. Eichenauer, 77 Ariz. 252, 269 P.2d 1057 (1954), this Court discussed the nature and elements of contributory negligence at some length. The Court first stated the circumstances under which the issue had to be submitted to the jury:

"If there is any substantial evidence from which reasonable men may infer that the party claiming affirmative relief from harm caused by the alleged negligence of another was himself negligent and such negligence *caused or contributed to the harm suffered*, then the jury must resolve the issue." [Emphasis added.] 77 Ariz. at 254, 269 P.2d at 1058.

After a statement of the facts of the case, the opinion then went on to say:

"Here plaintiff placed himself in a position of danger wherein he should have foreseen that a particular harm, to wit, bodily injuries inflicted by movement of the farm machinery, might be the end result of his act. The force which caused the movement of the machinery might come from one or more of a number of sources or be set off by varying circumstances not foreseeable in all their detail. However, this does not excuse the plaintiff's fault in voluntarily undertaking a known risk of harm which a reasonably prudent person would not have undertaken in the same circumstances, *which caused or contributed to his injuries*. In this connection it is also urged that plaintiff did not cause or contribute to his own injuries except in the sense that he furnished himself as the victim of defendant's negligence. However, *we think the causal requirement is satisfied by plaintiff's voluntarily subjecting himself to an unreasonable risk of harm, and there is a sufficient nexus between his*

*acts and the injury suffered for reasonable men to impute fault or responsibility therefor to him, and this is all the law requires."* [Emphasis added.] 77 Ariz. at 255, 269 P.2d at 1059.

Defendants assert that the jury could have felt that defendant Sander was negligent in backing the truck the way he did and that decedent Wise was negligent in trotting around behind the truck into its path, and that each of these acts independently constituted a proximate cause of the injury, but that under the instruction given, if the jury did not see some type of "combining" of the acts of the plaintiff and defendant they would be under the impression there was no contributory negligence on the part of the plaintiff.

We think there is merit to this argument made by the defendant, and are therefore of the opinion that the primary instruction as listed at MARJI 10, requiring that there be a "combining" of the negligence of the plaintiff with the negligence of the defendant, might be unnecessarily confusing to a jury. We accordingly hold that it should not be so given.

## IV. GROSS AND WANTON NEGLIGENCE

■ The trial court gave the following instruction on gross and wanton negligence to the jury:

"Contributory negligence is not a defense and the defendants cannot avail themselves of the same where the negligence on the part of the defendant was gross or wanton negligence. As used in these instructions *gross or wanton negligence indicates a reckless disregard for the rights of others or a reckless indifference to results.* If you find, therefore, that the defendant's negligence was gross or wanton then contributory negligence, if any, on the part of the deceased, Mr. Wise, is no defense in this case." [Emphasis added.]

The record shows this to be "Plaintiff's Requested Instruction No. 2"; the re-

quested instruction cites no authority as a basis for the wording of the instruction.

We have consistently held that an instruction on gross and wanton negligence can be given only where conduct meriting such an instruction is shown. Slight and inconclusive evidence is not enough, for as this Court stated in Butane Corp. v. Kirby, 66 Ariz. 272, 187 P.2d 325 (1947) :

"Slight and inconclusive evidence borders on the realm of conjecture. A defendant should not be held guilty of reckless misconduct unless there is evidence, or justifiable inferences therefrom, reasonably tending to establish such reckless misconduct." 66 Ariz. at 287, 187 P.2d at 335.

In that case we approved the following instruction defining wanton conduct:

"The word 'wanton' as used in this instruction indicates a reckless disregard of the right of others or a reckless indifference to results. By 'a reckless disregard of the rights of others or a reckless indifference to results,' as those words are used in this instruction, is meant the intentional doing of an act or failure to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other, but also involves a high degree of probability that substantial harm will result to him." 66 Ariz. at 286, 187 P.2d at 334.

The above holding has been cited as authority in several Arizona cases, one of the more recent of which is Nichols v. Baker, 101 Ariz. 151 at 153, 416 P.2d 584 at 586 (1966).

In deciding an issue such as this, it is important to distinguish between ordinary negligence and gross and wanton negligence. This distinction is well-stated in the Restatement of Torts, Second, which uses the term "reckless misconduct" to refer to the same type of conduct which we have denominated above as "gross and wanton

negligence". At § 500, Comment g., the statement is made that:

"Reckless misconduct differs from negligence in several important particulars. It differs from that form of negligence which consists in mere inadvertence, incompetence, unskillfulness, or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency, in that reckless misconduct requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man. * * * The difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of the risk, but this difference of degree is so marked as to amount substantially to a difference in kind."

A similar distinction was made in Alabam Freight Lines v. Phoenix Bakery, 64 Ariz. 101, 166 P.2d 816 (1946). In that case this Court first made a distinction between the rules of law applicable to cases involving ordinary negligence and cases involving gross and wanton negligence, and then went on to state that:

"The difference in rules applicable to the two classes of cases results from the difference in the nature of the conduct of the wrongdoers in the two kinds of cases. In the first case the wrongdoer is guilty of nothing worse than carelessness. In the last he is guilty of a willful, intentional wrong. His conduct is criminal or quasi criminal. If it results in the death of the injured person, he is guilty of manslaughter. [Citing cases.] The law is regardful of human life and personal safety, and, if one is grossly and wantonly reckless in exposing others to danger, it holds him to have intended the natural consequences of his act, and treats him as guilty of a willful and intentional wrong." 64 Ariz. at 110–111, 166 P.2d at 821.

Keeping these definitions in mind, we will now review the facts of the instant case which are relevant to the determination of whether the conduct of defendant Sander merited the giving of the instruction on gross and wanton negligence to the jury.

The record shows that defendant Sander backed a large dump truck approximately 300 feet. The estimates by witnesses at the trial as to the speed of the truck ranged from a low of about 3–4 m. p. h. to a high of about 12–15 m. p. h. During the time he was backing up, Sander was watching his rear-view mirrors very closely, looking from one side to the other, as evidenced in part by the fact that he backed between a man on a roller on one side of the truck and a man making compaction tests on the other side of the truck.

Decedent Wise directed Sander where to dump and then began gathering up his tape measure which ran down the left side of Sander's truck and on for a distance behind and to the left of the truck. Wise was about halfway back from the front of the truck when it started moving backwards. He continued toward the back of it as it moved along until he cleared the rear end of it and then turned to his left and crossed over into the path of it. At this point he apparently moved into the "blind spot" directly behind the truck which could not be seen by the driver through the use of his rear-view mirrors. Wise then apparently stopped and bent over to uncover some of his tape measure and began pulling it from under the dirt. At this point he was only 4 or 5 feet ahead of the rear end of the truck, apparently facing away from it. The truck continued its movement backwards and struck Wise. He was knocked down and was run over by its wheels.

Plaintiff's argument in support of the instruction on gross and wanton negligence rests basically on two main assertions involving evidentiary points: (1) That Sander drove his truck backward for a distance which was excessive in light of the fact that he was in a construction area

where others were working; and (2) That Sander drove his truck backward at an excessive and reckless speed.

As to the first point, the record indicates that the truck Sander was driving was about 60 feet in length. Even if Sander drove the truck the full 300 feet claimed by the plaintiff, that distance amounts to only about five times the length of the truck. From the evidence it appears that the layout of the construction site was such that Sander and other drivers dumping gravel in the same area had to make a sharp right turn in order to get back on the Black Canyon Highway, and that they had therefore developed the practice of backing their trucks up after dumping their loads of gravel in order to be able to make a wider turn in approaching the highway, thereby being better able to merge into the flow of traffic on the highway. As to the fact that Sander was driving his truck in a construction area in which others were working, we point out simply that he was driving in an open area at the construction site where heavy equipment is in operation constantly and where workmen are instructed to look out for their own safety.

We are therefore of the opinion that the records fails to show substantial evidence in support of plaintiff's assertion that Sander drove his truck backward for a distance which, considering that he was in a construction area where others were working, was excessive.

As to the second evidentiary point on which plaintiff's argument rests (i. e., the claim that Sander drove his truck backward at an excessive and reckless speed), the estimates of the speed of the truck given by witnesses at the trial ranged from a low of about 3–4 m. p. h. to a high of about 12–15 m. p. h. A representative of the company which manufactured the truck testified that the maximum speed of that particular year and model of truck, in the gear in which it was being driven at the time of the accident, was 7.6 m. p. h.

The highest estimates of the speed of the truck—12 to 15 m. p. h.—were given by the two men between whom defendant Sander backed his truck just prior to hitting decedent Wise. One man was operating a vibrator roller along a course parallel to and to the left of and behind Sander's truck. Because he was facing away from Sander's truck and because of the noise of the motor which powered his roller, he did not see or hear Sander's truck until it went by him on his left side. The other man was making compaction tests on the roadbed behind and to the right of Sander's truck. He was squatting or kneeling and did not see or hear Sander's truck coming. It passed him a few moments after it passed the man on the roller. Both men at the trial estimated the speed of Sander's truck to be about 12–15 m. p. h. As to the testimony of the witness who had been making compaction tests at the time of the accident, defense counsel at the trial read back to the witness the testimony he had given in a deposition which was taken about 11 months after the accident and about 14 months before the trial. The material read from the deposition tended to discredit certain of the testimony given by the witness at the trial, particularly as to his estimate of the speed of Sander's truck.

With this in mind, we are inclined to give little credence to the claim of the plaintiff that defendant Sander was traveling at a speed of 12 to 15 m. p. h.

There is another matter which also causes us to be so inclined. The evidence indicates that decedent Wise jogged along the side of the truck, turned and crossed over into its path, and bent over to pull his tape out of the dirt. He was therefore apparently moving faster than the truck, which plaintiff claims was moving along at 12 to 15 m. p. h. The fastest runners today run the mile in four minutes, or about 15 m. p. h. It takes a good athlete to be able to run the quarter-mile in a minute, which would also be about 15 m. p. h. These are runners who have trained hard for that purpose, and who run with light clothing and shoes, and on a smooth, flat track. At the time of the accident Wise was 51 years old and was trotting

along on a rough surface consisting of gravel and rocks which had been put down for a roadbed. From this line of reasoning we reach the conclusion that it is unlikely the truck was moving at the high rate of speed claimed by the plaintiff.

Therefore, we are of the opinion that the record shows little evidence in support of the assertion by the plaintiff that Sander drove his truck backward at an excessive and reckless speed.

The central question is whether the record shows substantial evidence of gross and wanton negligence so as to justify the giving of the instruction. If such evidence is not shown by the record, then it was reversible error for the instruction to have been given. Butane Corporation v. Kirby, supra, 66 Ariz. at 287, 187 P.2d at 335.

We are of the opinion that while the record may indicate ordinary negligence on the part of defendant Sander, it hardly shows gross and wanton negligence as defined by this Court. The evidence presented is not sufficient to show "a reckless disregard of the rights of others" such as would not only create an unreasonable risk of bodily harm to another, but also involve a high degree of probability that substantial harm would result. In any event, this is precisely the type of slight and inconclusive evidence bordering on the realm of conjecture which this Court in Nichols v. Baker, supra, 101 Ariz. at 153, 416 P.2d at 586, warned against as a basis for instrucing on gross and wanton negligence.

The trial court's error in instructing on gross and wanton negligence is particularly serious because there was sufficient evidence presented at the trial to raise the issue of contributory negligence and to warrant the giving of an instruction, which the court did, as discussed earlier in this opinion. The effect, then, of giving the unwarranted gross and wanton negligence instruction was to allow the jury to remove from their consideration the evidence of decedent's contributory negligence, thereby seriously prejudicing the defendants.

We therefore hold that the instruction on gross and wanton negligence given to the jury by the trial court was not warranted by the evidence and it was reversible error for the instruction to be given.

For the reasons set forth above, the case is reversed and remanded for a new trial.

STRUCKMEYER, V. C. J., and HAYS, J., concur.