SUPREME COURT OF ARIZONA
En Banc

JAMES TARRON and SHERRY TARRON,   )  Arizona Supreme Court
husband and wife,                     )  No.  CV-09-0230-PR
                                       )
         Plaintiffs/Appellees, )  Court of Appeals
                                 )  Division One
                    v.         )  No.  1 CA-CV 08-0436
                                 )
BOWEN MACHINE & FABRICATING,     )  Maricopa County
INC. dba BOWEN INDUSTRIAL       )  Superior Court
CONTRACTORS, INC., a foreign     )  No.  CV2006-002351
corporation,                        )
                                    )
        Defendant/Appellant. )  **O P I N I O N**
_____ )

Appeal from the Superior Court in Maricopa County
The Honorable John A. Buttrick, Judge

**REVERSED AND REMANDED**

_____

Opinion of the Court of Appeals, Division One
222 Ariz. 160, 213 P.3d 309 (App. 2009)

**AFFIRMED**

_____

ELY, BETTINI, ULMAN, & ROSENBLATT                Phoenix
    By   Ronald Ozer
       Burton Rosenblatt
Attorneys for James Tarron and Sherry Tarron

THE CAVANAGH LAW FIRM, P.A.                     Phoenix
    By   Ralph E. Hunsaker
       Taylor C. Young
Attorneys for Bowen Machine & Fabricating Inc. and
Bowen Industrial Contractors, Inc.

LAW OFFICES OF DAVID L. ABNEY, ESQ.           Phoenix
    By   David L. Abney
Attorney for Amicus Curiae of
The Law Offices of Charles M. Brewer, Ltd.

_____

**B E R C H**, Chief Justice

¶1        This case concerns the "borrowed servant" doctrine. The issue for decision is whether a general employer is vicariously liable for the negligence of two "borrowed employees" working at the jobsite of a special employer.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

¶2        James Tarron was injured while working at a Phelps Dodge Corporation copper smelter. He fell into a gap created when two workers removed access ramps to a converter. Instead of covering the gap or installing a barrier, the workers strung yellow caution tape around the opening. Thinking that a handrail was in place, Tarron leaned on the caution tape, lost his balance, and fell approximately eighteen feet, seriously injuring his elbow and ankle.

¶3        The two workers who put up the caution tape were temporary employees loaned to Phelps Dodge under a labor agreement with Bowen Machine & Fabricating, Inc. The labor agreement consisted of a 1995 "Master Agreement" and a 2004 "Supplement."

¶4        Tarron sued Bowen, alleging that Bowen was responsible under the doctrine of respondeat superior for the negligent work of the two borrowed employees.[1]

---

[1]      Tarron's recovery from Phelps Dodge was limited to workers' compensation benefits. *See* Ariz. Rev. Stat. ("A.R.S.") § 23-

¶5 Bowen moved for summary judgment, arguing that it was not vicariously liable because the two employees were working under Phelps Dodge's direction. Tarron cross-moved for partial summary judgment. The trial court granted Tarron's motion and denied Bowen's motion, finding that, although Phelps Dodge "exercised actual control over the work at issue," section 6 of the Master Agreement gave Bowen the legal right to control the employees.

¶6 The jury awarded Tarron damages of $1.5 million, apportioning fault as follows: Tarron, 2%; Phelps Dodge, 38%; and Bowen, 60%.

¶7 The court of appeals affirmed the denial of Bowen's motion for summary judgment, but reversed the partial summary judgment in favor of Tarron, finding an issue of material fact as to "whether Bowen surrendered to Phelps Dodge the exclusive right to control [the two employees'] work activities related to installing a barrier." *Tarron v. Bowen Mach. & Fabricating, Inc.*, 222 Ariz. 160, 165, 171 ¶¶ 21, 47-48, 213 P.3d 309, 314, 320 (App. 2009).

¶8 We granted Tarron's petition for review and Bowen's cross-petition because interpretation of the borrowed servant doctrine is an issue of statewide importance. We have

1022 (1995) (making recovery of workers' compensation "the exclusive remedy against the employer or any co-employee acting in the scope of his employment").

jurisdiction under Article 6, Section 5, Clause 3, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") section 12-120.24 (2003).

## II. DISCUSSION

### A. The Borrowed Servant Doctrine[2]

#### 1. Background

¶9        The doctrine of respondeat superior generally holds an employer vicariously liable for the negligent work-related actions of its employees. *See Throop v. F.E. Young & Co.*, 94 Ariz. 146, 150–51, 382 P.2d 560, 562–63 (1963); *Lee Moor Contracting Co. v. Blanton*, 49 Ariz. 130, 133–36, 65 P.2d 35, 36–38 (1937). The borrowed servant doctrine allows an employer who loans its employees to another to escape vicarious liability for the employees' negligent acts under certain circumstances.

¶10        A borrowed servant relationship arises

> when an employer sends one of its employees to do some work for a separate business. The employer usually is referred to as the "general employer" in the law of agency. The separate business often is called the "borrowing" or "special" employer. The transfer frequently is pursuant to a contract between the general and borrowing employers which calls for compensating the general employer. . . . The general employer has no intention of severing its employment relationship with its employee. Instead, the loaned

---

[2]        We use the term "borrowed servant" or "borrowed employee" doctrine to distinguish vicarious liability in the tort context from the "loaned" or "lent" employee doctrine applicable in the workers' compensation context. *See Inmon v. Crane Rental Servs., Inc.*, 205 Ariz. 130, 132 n.2 ¶ 6, 67 P.3d 726, 728 n.2 (App. 2003).

> employee is subject to the instructions of the borrowing employer.

J. Dennis Hynes, *Chaos and the Law of Borrowed Servant: An Argument for Consistency*, 14 J.L. & Com. 1, 4 (1994).

¶11       The doctrine has generated much confusion.  Justice Cardozo reflected on the difficulty in determining when to attribute a borrowed employee's acts to the general employer and when to the special:  "The law that defines or seeks to define the distinction between general and special employers is beset with distinctions so delicate that chaos is the consequence.  No lawyer can say with assurance in any given situation when one employment ends and the other begins."  Benjamin N. Cardozo, *A Ministry of Justice*, 35 Harv. L. Rev. 113, 121 (1921); *see also* Restatement (Third) of Agency § 7.03 cmt. d(2) (2006) ("When an actor negligently injures a third party while performing work for the firm that has contracted for the actor's services, the question is whether that firm (often termed the 'special employer') or the initial employer (often termed the 'general employer'), or both, should be subject to liability to the third party.").

¶12       To determine whether a general employer remains vicariously liable for the negligent act of an employee it has contracted out to another, courts typically examine whether the general employer either exercised actual control over the acts

giving rise to the injury or retained a right to control those acts. *See, e.g., Williams v. Wise*, 106 Ariz. 335, 338, 476 P.2d 145, 148 (1970) (focusing on "the right to control, rather than the actual exercise of control"); *Lee Moor*, 49 Ariz. at 136, 65 P.2d at 37-38 ("Control or right to control determines liability.").

¶13     In determining liability, courts focus on "which employer had control of the details of the particular work being done at the time of the injury-causing incident." *Ruelas v. Staff Builders Pers. Servs., Inc.*, 199 Ariz. 344, 346 ¶ 5, 18 P.3d 138, 140 (App. 2001).  In some circumstances, the general employer and special employer may both be liable because each had actual control of, or the right to control, the employee's actions.  *See, e.g., Inmon*, 205 Ariz. at 135 ¶ 20, 67 P.3d at 731; *Ruelas*, 199 Ariz. at 348 ¶ 13, 18 P.3d at 142; *McDaniel v. Troy Design Servs. Co.*, 186 Ariz. 552, 555-56, 925 P.2d 693, 696-97 (App. 1996).

¶14     The Master Agreement provides that the loaned employees are "not agents or employees" of Phelps Dodge and that Phelps Dodge "will have no direction or control as to the method of performance" of their work.  Based on this language, the trial court found Bowen vicariously liable as a matter of law, reasoning that it had retained a contractual right to control the two borrowed workers.

¶15    Summary judgment is appropriate "if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law."  *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 482 ¶ 14, 38 P.3d 12, 20 (2002).  We stated long ago, however, that "[w]hether a lent or hired servant continues the servant of his general employer, or becomes the servant of the borrower or hirer, is always a question of fact." *Lee Moor*, 49 Ariz. at 135, 65 P.2d at 37; *see also* Restatement (Third) of Agency § 7.03 cmt. d(2) ("It is a question of fact whether a general or a special employer, or both, have the right to control an employee's conduct."); Restatement (Second) of Agency § 227 cmt. a (1958) (to same effect).

¶16    Notwithstanding the sweeping language in *Lee Moor* and the Restatement sections, summary judgment on the question may sometimes be appropriate.  If the evidence is such that "reasonable persons might well come to different conclusions as to who had the control or right of control at the time of the accident, the issue should be submitted to the jury." *Williams*, 106 Ariz. at 338–39, 476 P.2d at 148–49; *see also Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990) (finding entry of summary judgment appropriate "if the facts produced in support of the claim . . . have so little probative value, given the quantum of evidence required, that reasonable people could

not agree with the conclusion advanced by the proponent of the claim"). Since *Williams*, a number of Arizona cases have resolved the borrowed servant question as a matter of law. *E.g.*, *Ruelas*, 199 Ariz. at 348 ¶ 14, 18 P.3d at 142; *McDaniel*, 186 Ariz. at 556–57, 925 P.2d at 697–98. Thus, while the borrowed servant issue typically presents a fact question, if the employer's right to control is "clear and uncontradicted," the court may determine the issue as a matter of law. *Williams*, 106 Ariz. at 339, 476 P.2d at 149. We review a trial court's grant of summary judgment de novo, viewing the evidence in favor of the party against whom summary judgment was entered. *Espinoza v. Schulenburg*, 212 Ariz. 215, 216 ¶ 6, 129 P.3d 937, 938 (2006).

2.    Contract Reservation of Right to Control

**¶17**    The record contains ample evidence that Phelps Dodge actually controlled the work of the two employees. Notwithstanding this evidence, Tarron claims that the superior court correctly ruled, based on language in the Master Agreement, that Bowen had reserved a contractual right to control the employees.

**¶18**    Workers are often borrowed "pursuant to a contract between the general and borrowing employers which calls for compensating the general employer." Hynes, *supra* ¶ 10, at 4. These contracts "routinely provide that the lent employee is *not*

a special employer's employee for any purpose." Section 6 of the Master Agreement follows that model, providing that Phelps Dodge "will have no direction or control as to the method of performance of the Work" performed by employees borrowed from Bowen. The provisions of the Master Agreement, on their face, thus plainly gave Bowen the right to control the work of the two employees.

¶19 The question nonetheless remains whether, despite these contract terms, Bowen ceded that right to Phelps Dodge. Bowen maintains that notwithstanding the contract terms, the court should find as a matter of law that Phelps Dodge exercised complete control over the details of the job function at issue. Tarron counters that the contract provisions conclusively establish Bowen's right to control as a matter of law.

¶20 The court of appeals correctly rejected both positions. Contrary to Tarron's assertion, contract language does not always determine employment status. *See Santiago v. Phoenix Newspapers, Inc.*, 164 Ariz. 505, 508, 794 P.2d 138, 141 (1990). Rather, the factfinder must determine the "objective nature of the relationship." *Id.* (quoting *Anton v. Indus. Comm'n*, 141 Ariz. 566, 568, 688 P.2d 192, 194 (App. 1984)).

¶21 In *Santiago*, for example, the plaintiff was injured when he was struck by a newspaper delivery car. 164 Ariz. at 506, 794 P.2d at 139. He sued Phoenix Newspapers, claiming that

the driver was an agent of that company. *Id.* The contract between the driver and the defendant, however, identified the driver as an independent contractor. *Id.* at 507, 794 P.2d at 140.

¶22 We concluded that "[c]ontract language does not determine the relationship of the parties[;] rather the 'objective nature of the relationship [is] determined upon an analysis of the totality of the facts and circumstances of each case.'" *Id.* at 508, 794 P.2d at 141 (quoting *Anton*, 141 Ariz. at 568, 688 P.2d at 194). Other evidence — that the newspaper "designated the time for pick-up and delivery, the area covered, the manner in which the papers were delivered, *i.e.*, bagged and banded, and the persons to whom delivery was made," *id.* at 510, 794 P.2d at 143 — would support a jury's finding that the deliveryman was a newspaper company employee, rather than an independent contractor. *Id.* at 512, 794 P.2d at 145. We therefore vacated the summary judgment in favor of the newspaper and remanded the case for a trial on the merits. *Id.* at 513, 794 P.2d at 146.

¶23 *Santiago* demonstrates that contractual language is not talismanic. Contractual provisions may provide evidence of employment status, but they are not determinative. The trier of fact must examine the objective nature of the employment relationship when determining employment status, one indicator

of which may be contract terms.

### 3.    The Restatement (Third) of Agency § 7.03

¶24    The court of appeals also relied on the Restatement (Third) of Agency § 7.03 in determining that it should "not limit the facts to be considered to the contract between the two employers[,] but . . . the jury should consider all relevant facts, especially facts that contradict the clear terms of a contract."   *Tarron*, 222 Ariz. at 169 ¶ 38, 213 P.3d at 318 (citing Restatement (Third) of Agency § 7.03 cmt. d(2)).   We agree with this approach.

¶25    Arizona courts have traditionally relied on the Restatement (Second) of Agency § 227 for guidance in determining an employer's right to control employees.   *See, e.g.*, *Williams*, 106 Ariz. at 337–38, 476 P.2d at 147–48; *Inmon*, 205 Ariz. at 135–36 ¶ 22, 67 P.3d at 731–32; *Ruelas*, 199 Ariz. at 346 ¶ 5, 18 P.3d at 140.   That section provides that "the important question is not whether or not [the employee] remains the servant of the general employer as to matters generally, but whether or not, *as to the act in question*, he is acting in the business of and under the direction of one or the other."   Restatement (Second) of Agency § 227 cmt. a (emphasis added).   Section 227 creates a presumption that the general employer remains vicariously responsible for the employees' actions, stating that "[i]n the absence of evidence to the contrary, there is an inference that

the actor remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by the general employer." *Id.* cmt. b.

¶26     The Third Restatement retains the presumption, but permits the general employer to rebut it by presenting "factual indicia" showing that the special employer has assumed control. *See* § 7.03 cmt. d(2).  It recognizes that a general employer in the business of providing temporary workers may surrender or cede to the special employer its right to control the work of borrowed employees.  *See id.* ("When both a general and special employer have the right to control an employee's conduct, the practical history of direction may establish that one employer in fact ceded its right of control to the other, whether through its failure to exercise the right or otherwise.").

¶27     We find appropriate § 7.03's practical allocation of liability to the employer that actually controls the work or has the right to control the accident-causing conduct and is in the best "position to take measures to prevent the injury suffered by the third party."  It harmonizes with our borrowed servant jurisprudence by examining the right to control and emphasizing that such an analysis should usually be a question for the trier of fact.  *See id.*

¶28     Although not providing an exhaustive list, § 7.03 identifies several factors to guide the right-of-control

determination, many of which have been employed by Arizona courts for years. It includes

> the extent of control that an employer may exercise over the details of an employee's work and the timing of the work; the relationship between the employee's work and the nature of the special employer's business; the nature of the employee's work, the skills required to perform it, and the degree of supervision customarily associated with the work; the duration of the employee's work in the special employer's firm; the identity of the employer who furnishes equipment or other instrumentalities requisite to performing the work; and the method of payment for the work.

*Id.* § 7.03 cmt. d(2); *cf. Ruelas*, 199 Ariz. at 347 ¶¶ 8-9, 18 P.3d at 141 (considering several of the factors specified by § 7.03 cmt. d(2)); *McDaniel*, 186 Ariz. at 555, 925 P.2d at 696 (same). Section 7.03 also suggests consideration of which employer was in the better position "to take measures to prevent the injury suffered by the third party." Restatement (Third) of Agency § 7.03 cmt. d(2).

¶**29** In some instances, a general employer and a special employer may both be vicariously liable for an injury. *See, e.g., Inmon*, 205 Ariz. at 135 ¶ 20, 67 P.3d at 731; *McDaniel*, 186 Ariz. at 556, 925 P.2d at 697. The comments to § 7.03 expressly embrace this possibility of dual liability. *See* Restatement (Third) of Agency § 7.03 cmt. d(2) (noting that when a borrowed employee negligently injures another, "the question is whether . . . the 'special employer'[] or . . . the 'general

- 13 -

employer'[], *or both*, should be subject to liability") (emphasis added); *id.* (calling it a fact question "whether a general or a special employer, or both, have the right to control an employee's conduct").

¶30     The possibility of dual liability for the acts of borrowed servants conflicts with the notion that a special employer must have the exclusive right to control a borrowed employee in order to be vicariously liable, and to the extent that our cases suggest that exclusive control is necessary, we disapprove such suggestions. *See Inmon*, 205 Ariz. at 135 ¶ 19, 67 P.3d at 731; *McDaniel*, 186 Ariz. at 555, 925 P.2d at 696. Instead, the facts surrounding the borrowed servant relationship determine whether the general employer, the special employer, or both actually controlled or had the right to control the injury-causing activity of the borrowed employees.

¶31     We also distance ourselves from the "furthering the business" language in *Lee Moor*, 49 Ariz. at 135, 65 P.2d at 37, because we find the construct unhelpful.  The borrowed servant at some level always furthers the business of the lender, which is lending or leasing employees.  Instead, the question is whether the lender actually controlled the borrowed employees or ceded the right to control.

     4.   Bowen's Right to Control Borrowed Employees

¶32     Whether Bowen ceded its right to control the borrowed

- 14 -

employees' work must be considered in light of the facts relating to the injury-causing event. The trial court considered only one fact — the contractual provisions — which, although relevant to the determination of whether Bowen retained a right of control, are not conclusive on the issue. We agree with the court of appeals that there was sufficient evidence in the record to create a material issue of fact regarding whether, despite the contract, Bowen had ceded its right of control to Phelps Dodge. The grant of summary judgment therefore was not proper.

**B.      New Trial**

¶33      Because we find that genuine issues of material fact exist as to whether Bowen retained a right to control the work of the borrowed employees, we affirm the court of appeals' reversal of the trial court's entry of partial summary judgment as to Bowen's vicarious liability and remand for a new trial. For the same reason, we agree with the court of appeals that summary judgment was properly denied to Bowen. We take this opportunity to clarify the issues on remand.

¶34      The jury awarded Tarron $1.5 million in damages. Because the jury's award was unrelated to which employer was liable to pay damages, we see no reason to retry the jury's award of damages.

¶35      The jury allocated thirty-eight percent of fault to

- 15 -

Phelps Dodge and two percent to Tarron.  Neither the petition nor the cross-petition challenges those allocations.  Tarron's petition for review seeks to affirm the trial court judgment holding Bowen liable for the remaining sixty percent as a matter of law; the cross-petition claims that Bowen is not liable at all under the facts of this case.  There is therefore no reason to remand on any issue other than whether Bowen ceded its right to control the work performed by the two employees.  The remand is therefore limited to that issue.

### III.  CONCLUSION

¶36      For the foregoing reasons, we reverse the trial court's entry of summary judgment for Tarron as to Bowen's vicarious liability, affirm the judgment of the court of appeals, and remand this cause to the trial court for a new trial.


_____
Rebecca White Berch, Chief Justice

CONCURRING:

_____
Andrew D. Hurwitz, Vice Chief Justice

_____
Michael D. Ryan, Justice

_____
W. Scott Bales, Justice

_____
A. John Pelander, Justice