NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

ROSALITA CLEVELAND, et al., *Plaintiffs/Appellants*,

*v.*

MARCO CRANE & RIGGING CO., *Defendant/Appellee*.

No. 1 CA-CV 20-0229
FILED 2-23-2021

---

Appeal from the Superior Court in Maricopa County
No. CV2018-004585
The Honorable Danielle J. Viola, Judge

**AFFIRMED**

---

COUNSEL

Ahwatukee Legal Office, P.C., Phoenix
By David L. Abney
*Counsel for Plaintiffs/Appellants*

May, Potenza, Baran & Gillespie, P.C., Phoenix
By Jesse Callahan, Andrew Lishko
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Randall M. Howe joined.

---

**C R U Z**, Judge:

¶1      Rosalita Cleveland and Jerald Cleveland ("Cleveland") appeal the superior court's grant of summary judgment in favor of Appellee Marco Crane & Rigging Co. ("Marco Crane") and dismissal of its negligence claims. For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2      Timber Peaks Construction, LLC ("Timber Peaks") entered into an agreement (the "Rental Agreement") for Marco Crane to lease a crane and provide a crane operator, Benny Ellsworth, to Timber Peaks for the construction of homes. The Rental Agreement stated that "Customer [Timber Peaks] agrees that the rented equipment and all persons operating the rented equipment, including persons supplied by Company [Marco Crane] to operate or otherwise work with the equipment are under the exclusive and complete direction, control and supervision of the Customer [Timber Peaks]." It also provided that "Customer [Timber Peaks] is the Lift Director/Supervisor for all work performed under this Agreement and agrees to provide qualified, competent and experienced personnel to direct, supervise, control and signal the operation of the rented equipment and its personnel." The Rental Agreement also included an indemnity clause in which Timber Peaks agreed to "defend, indemnify, and save" Marco Crane "harmless from any loss, damage, liability, cost or expense" arising out of or related to the Rental Agreement.

¶3      Ellsworth was sent to the Timber Peaks worksite to complete three crane lifts of trusses and wood sheeting. Besides Ellsworth, no other Marco Crane employees were present at the jobsite. Cleveland was an employee with Timber Peaks and served as a crane signaler for the project, alongside the project superintendent Victor Shorty. During one of the lifts, Ellsworth was following hand signals from Cleveland, which suggested certain wood sheeting was unstrapped at two points. Cleveland had only disconnected one strap from the wood sheeting. When Ellsworth followed Cleveland's signal the sheet broke and hit Cleveland, knocking him from

an elevated surface. Cleveland fell onto a concrete slab and suffered severe injuries.

¶4 Appellants sued Marco Crane for negligence under the doctrine of respondeat superior for the alleged negligent acts of its employee, Ellsworth. Marco Crane moved for summary judgment, arguing it was not liable pursuant to the Rental Agreement and the borrowed servant doctrine. The court entered judgment in favor of Marco Crane. Appellants filed a motion to set aside the judgment and for a new trial, which was denied.

¶5 Cleveland timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), -2101(A).

## DISCUSSION

¶6 Appellants argue the superior court erred in granting Marco Crane's motion for summary judgment and denying its motion to set aside the judgment and for a new trial. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. ("Rule") 56(a). We review the grant of summary judgment de novo, and we view the evidence and all reasonable inferences in favor of the non-moving party. *Wells Fargo Bank, N.A. v. Allen*, 231 Ariz. 209, 213, ¶ 14 (App. 2012); *State ex rel. Corbin v. Sabel*, 138 Ariz. 253, 255 (App. 1983). We review denials of motions to set aside the judgment and for a new trial for an abuse of discretion. *Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 191 (App. 1994).

¶7 Marco Crane contends Appellants failed to properly dispute the facts in its motion for summary judgment pursuant to Rule 56(e). However, this alone does not entitle Marco Crane to summary judgment. The court must consider the entire record before deciding a summary judgment motion, and "[s]ummary judgment is inappropriate where the facts, even if undisputed, would allow reasonable minds to differ." *Nelson*, 181 Ariz. at 191; *Schwab v. Ames Constr.*, 207 Ariz. 56, 59, ¶ 15 (App. 2004).

I. Borrowed Servant Doctrine[1]

¶8 "The doctrine of respondeat superior generally holds an employer vicariously liable for the negligent work-related actions of its

---

[1] Appellants argue that, pursuant to A.R.S. § 23-1022, the workers' compensation test for lent employees should apply. However, as Marco

employees." *Tarron v. Bowen Mach. & Fabricating, Inc.*, 225 Ariz. 147, 150, ¶ 9 (2010). An employer that lends its employees to another can escape vicarious liability for the employees' negligent acts under the borrowed servant doctrine. *Id.* A borrowed servant relationship results

> when an employer sends one of its employees to do some work for a separate business. The employer usually is referred to as the "general employer" in the law of agency. The separate business often is called the "borrowing" or "special" employer. The transfer frequently is pursuant to a contract between the general and borrowing employers which calls for compensating the general employer. . . . The general employer has no intention of severing its employment relationship with its employee. Instead, the loaned employee is subject to the instructions of the borrowing employer.

*Id.* at ¶ 10 (citation omitted).

**¶9**        In deciding whether a general employer remains vicariously liable for its employee's negligent acts, courts determine whether the general employer exercised actual control over the acts giving rise to the injury or retained a right to control those acts. *Id.* at ¶ 12. The focus is on "which employer had control of the details of the particular work being done at the time of the injury-causing incident." *Ruelas v. Staff Builders Pers. Servs., Inc.*, 199 Ariz. 344, 346, ¶ 5 (App. 2001).

**¶10**        The Restatement (Third) of Agency provides a non-exhaustive list of factors that can be used by the courts to guide the right-of-control determination:

> the extent of control that an employer may exercise over the details of an employee's work and the timing of the work; the relationship between the employee's work and the nature of

---

Crane notes, Appellants did not raise a claim under A.R.S. § 23-1022, and Marco Crane did not raise the statute in its motion for summary judgment to allege it is entitled to immunity from Appellants' suit. This statute is not directly relevant, and we decline to apply the workers' compensation principles to this inquiry. *See Carnes v. Phoenix Newspapers, Inc.*, 227 Ariz. 32, 36-37, ¶¶ 17-20 (App. 2011) (noting the differences between the workers' compensation and tort system, and stating that "the rules adopted for work[er]s' compensation cases should not be mechanically applied in negligence cases") (internal quotation omitted).

the special employer's business; the nature of the employee's work, the skills required to perform it, and the degree of supervision customarily associated with the work; the duration of the employee's work in the special employer's firm; the identity of the employer who furnishes equipment or other instrumentalities requisite to performing the work; and the method of payment for the work.

Restatement (Third) of Agency § 7.03 cmt. d(2) (2006).

**¶11** "It is a question of fact whether an employee continues as the general employer's servant or becomes the special employer's servant for a particular act." *Ruelas*, 199 Ariz. at 346, ¶ 7. Nonetheless, summary judgment is appropriate, and the court may determine the issue as a matter of law, if the employer's right to control is "clear and uncontradicted." *Williams v. Wise*, 106 Ariz. 335, 339 (1970). And a motion for summary judgment "should be granted if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990).

**¶12** In this case, Timber Peaks and Marco Crane entered into a contract in which the parties agreed that Ellsworth and the rented crane were "under the exclusive and complete direction, control and supervision of [Timber Peaks]." In *Tarron*, the Arizona Supreme Court held that contract language alone is not determinative as to the issue of control, and "[t]he trier of fact must examine the objective nature of the employment relationship when determining employment status, one indicator of which may be contract terms." *Tarron*, 225 Ariz. at 151-52, ¶¶ 20, 23.

**¶13** In *Tarron*, the general employer entered into a contract with the special employer that stated the general employer would retain the right to control the borrowed employees. *Id.* at 151, ¶ 18. However, evidence established that the parties acted inconsistently with the contract, and the special employer actually exercised control over the employees. *Id.* at ¶ 17. Summary judgment was inappropriate based solely on the contractual terms because the parties did not act as contemplated by the contract. *Id.*; *see also Coco v. Port of Corpus Christi Auth.*, 132 S.W.3d 689, 692-93 (Tex. App. 2004) (finding that "contractual designation of control will not establish borrowed servant status as a matter of law where evidence shows that the parties acted to the contrary"); *Burgan v. City of Pittsburgh*, 542 A.2d 583, 574, 578 (Pa. Commw. Ct. 1988) (affirming the lower court's

ruling that CBI's employees were not borrowed servants of Ram despite the parties' contract providing otherwise because "the facts belie[d] the language of the Service Agreement as to Ram being in control of the blasting" and so the "agreement was a sham and unenforceable"); *Civello v. Johnson*, 567 So.2d 643, 647-48 (La. Ct. App. 1990) (finding a material fact issue existed whether an Urban employee was a loaned servant of Cox as provided for in a contractual agreement, because notwithstanding the contract provision, Cox "exercised control of almost every aspect of its relationship with Urban personnel").

¶14        Here, however, the parties acted in a manner contemplated by the Rental Agreement. Pursuant to the Rental Agreement, Ellsworth and the crane were "under the exclusive and complete direction, control and supervision of [Timber Peaks]." Timber Peaks provided the jobsite and the supervisor that directed and oversaw Ellsworth. The Timber Peaks supervisor, Shorty, admitted to telling Ellsworth that he was Ellsworth's "boss," and he and Cleveland gave Ellsworth the hand signals for when and where to move the crane. There were no other Marco Crane employees present at the jobsite besides Ellsworth. No evidence presented even suggested that the parties did not act as contemplated by the contract.

¶15        Appellants contend the Restatement factors demonstrate Marco Crane had a right to control Ellsworth. The Restatement factors serve as a helpful guide to courts when determining the issue of control, although they need not be applied mechanically in each case. "The focus is on which employer had the right to control the specific injury-causing activity." *Ruelas*, 199 Ariz. at 347, ¶ 11.

¶16        Appellants argue Timber Peaks could not have exercised control over Ellsworth because he alone controlled the details of "how" to operate the crane, while Timber Peaks employees merely directed Ellsworth "when" and "where" to move the crane. We are unpersuaded by this argument. Using his specialized skills, Ellsworth operated the crane as directed by Timber Peaks signalers. Although he alone may be in control over "how" to operate the crane, this does not demonstrate that Marco Crane exercised any control over when and where to move the wood sheeting. Those decisions were made by Timber Peaks' employees, for the benefit of Timber Peaks, and without input from Marco Crane.

¶17        Appellants also argue that Ellsworth was a "highly skilled specialist," which demonstrates he was under the control of his general employer, Marco Crane. However, as is clear in *Ruelas*, skilled workers can be "borrowed servants." *See Ruelas*, 199 Ariz. at 347, ¶ 8 (nurses that were

"licensed and experienced" were found to be borrowed servants). Further, the Restatement (Third) of Agency notes that "borrowed servants" can "span the range of highly skilled professionals," which includes "skilled construction workers." Restatement (Third) of Agency § 7.03 cmt. d(2) (2006).

¶18 Appellants also contend Marco Crane's continued right to control Ellsworth is evidenced by the fact that Marco Crane provided the crane that Ellsworth operated. But this alone cannot be the basis on which control is found, because otherwise, the borrowed servant doctrine would be rendered meaningless in cases where an employer rents out both the machinery and employee to another. Regardless of any right Marco Crane may have retained over Ellsworth as his general employer, or over the heavy equipment as its owner, no evidence suggests Marco Crane actually exercised any right of control over Ellsworth or over the crane once Ellsworth was at the Timber Peaks worksite.

¶19 Given the quantum of evidence required, Appellants have failed to create a genuine issue of material fact as to whether Timber Peaks had the right to control and actually controlled Ellsworth for its benefit. The superior court did not err in entering summary judgment in favor of Marco Crane and it did not abuse its discretion in denying the motion to set aside the judgment and for a new trial.

¶20 As the prevailing party, Marco Crane is entitled to an award of its costs incurred on appeal pursuant to A.R.S. § 12-341 and on compliance with ARCAP 21.

**CONCLUSION**

¶21 For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA